Richard C. IGLEHART, by his next friend,
Jacqueline S. Iglehart, Appellant
(Plaintiff below),

v.

Virginia PETROSSI, Appellee
(Defendant below).

No. 3421.

Supreme Court of Wyoming.

Jan. 26, 1966.

Raymond B. Whitaker, Casper, for appellant.

R. R. Bostwick of Murane, Bostwick, McDaniel & Scott, Casper, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

This was a suit for personal injuries of a minor, Richard C. Iglehart, whose bicycle and the car driven by defendant, Virginia Petrossi, collided in a Casper street. At the time of the accident, the minor was eight years, nine months, old. Trial was to a jury, but defendant, upon conclusion of plaintiff's evidence and again after her own, moved for a directed verdict. The court reserved decision on the first motion but granted the second, and from such ruling this appeal resulted.

Plaintiff having presented no witness concerning the collision except defendant, these facts are undisputed: Defendant, in a Plymouth 4-door station wagon, was proceeding easterly along Fifteenth Street in Casper about 8:15 on the morning of June 19, 1963, accompanied by a Mrs. Reich, who sat in the front seat, and four children, who were in the rear. The weather was clear, the sun was not in her eyes, but she was wearing sunglasses. Fifteenth, a through street, ran east and west; the street, Westridge Terrace, to defendant's right, ran north and south, and was marked with a stop sign where it intersected Fifteenth, there becoming a dead end. Another dead-end street, Cypress, came from the north into Fifteenth a short distance west of the mentioned intersection. Fifteenth Street was forty-three feet wide at the intersection, and Westridge Terrace thirty. Beginning 300 feet west of Westridge Terrace, Fifteenth Street sloped slightly upward, rising approximately ten feet over a distance of 250 feet, cresting at Cypress and being approximately level from Cypress on to Westridge. As the defendant approached Westridge Terrace, she was looking forward and to the sides.

Exhibit 3, a photograph of the intersection taken from a point westerly, shows a rather thick grove of trees extending back from the corner of Fifteenth and Westridge Terrace through which there is limited vision for some four or five feet above the ground. The defendant on interrogation said she did not look directly through the trees, that she would have had to take her eyes off anything coming toward her if she had, but conceded that if one were standing still or going slowly enough one could have seen through them. She estimated her speed at twenty-four to twenty-five miles per hour. As defendant approached the intersection, she saw Richard on his bicycle appear very suddenly, crossing the curb line and entering Fifteenth Street. She immediately stepped on her brakes, which were in excellent condition. She was not able to estimate the distance she was away when she first observed him but upon questioning marked the point as being at approximately the westerly edge of the intersection. It is stipulated that the skid marks left by her car were thirty-two feet, five inches, and that from the point of impact with the bicycle there was a further distance to where the boy ultimately ended of four feet, five inches. The car bumped Richard and he fell over to the pavement, defendant's vehicle stopping without reaching the point where he fell. The matter stood thus at the end of plaintiff's case. Thereafter defendant called Richard as a witness. He said he was riding his sister's bicycle, was going to an address on Cypress Street to borrow a comb, and did not at any time see defendant's car before he was struck. Mrs. Reich added little. She said she did not see Richard until he was practically in front of the car, that at about the same time the brakes were applied and the car skidded, throwing her against the dash. She had no recollection of the boy's looking in the direction of the car. When she saw him he was just to the right front of the car, coming in front of the car and turning to the right. He was struck by the center of the bumper. Harry Williamson testified that for several blocks he had been driving behind defendant's car, approximately two lengths. He verified her speed at twenty-five miles per hour and said there was no trouble with the sun and that when he was about entering the point where Cypress Street intersected Fifteenth he first saw Richard moving rapidly approximately ten feet southerly from the Westridge intersection, after the boy had come from behind the trees. He did not see Richard stop before entering Fifteenth, but saw the bike dart out in front of defendant's car, seeming at first to go northerly and slightly to the west and then making a swift jerk, attempting to turn to the east. Immediately following his seeing the boy, the defendant put on her brakes with full force.

Plaintiff's arguments that the court erred in directing a verdict for the defendant must be viewed first in the light of any negligence proved against her and second any contributory negligence of the injured boy. To support his contention that defendant was negligent, plaintiff says this was a residential area, that defendant knew that small children were in the neighborhood, that they rode bicycles, and had had them run out from intersections in front of her before; that she not only should have known these facts, she did know them. She did not slow down. She did not look. She did not sound her horn, and did not swerve to avoid the collision. He cites Holstedt v. Neighbors, Wyo., 377 P.2d 181, and Feltner v. Bishop, Wyo., 348 P.2d 548, for the principle that if a motorist is aware children are in the habit of playing around an area there is a duty imposed on the operator of the motor vehicle to exercise a higher degree of care than under ordinary circumstances. Although this court has recognized the rule, we have not made it so all-embracing as to mean that such a high degree of caution must be exercised that possibility of accident is entirely obviated despite an unforeseeable circumstance. Moreover, the evidence here while indicating that this was a residential area having children who rode bicycles did not show it to be the type

referred to in the Holstedt case; rather the situation here would seem to embrace ordinary traffic conditions and intersections not dissimilar to normal residential areas. Cases from other jurisdictions cited by plaintiff relate to circumstances entirely different from those in the instant litigation, e. g., Stowers v. Carp, 29 Ill.App.2d 52, 172 N.E.2d 370, concerns an action for injuries sustained by a five-year-old child struck by a truck in a narrow alley at the rear of several large apartment buildings, in a crowded residential area, where there were many children, who customarily played in the small back-yard areas and alley and there were no fences to separate the back yards from the alley; Butler v. Allen, 233 N.C. 484, 64 S.E.2d 561, relates to the wrongful death of a five-year-old child who ran into a street and was struck by an automobile going at a speed of sixty miles per hour.

█ Viewing the record of this case in the aspect most favorable to plaintiff, there is no evidence whatever of any violation of a statute or ordinance or in fact of negligence of any kind. Thus, the court was fully justified in directing a verdict for defendant at the conclusion of the case and such action was warranted at the time the plaintiff rested.

Basic to plaintiff's contention that defendant was negligent in this case is the reference to this court's quotation in Mc-Dowall v. Walters, Wyo., 360 P.2d 165, 169, of a statement from 1 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., 1960 Cum. Pocket Part, § 681, p. 209: "'It has been stated that failure to look at all constitutes negligence as a matter of law while the question as to whether one who looks sees all that he should see is one of fact for the jury.'" A clarifica-

tion of any misconception drawn from that case is warranted. Initially, it should be noted that the quoted statement from Blashfield was based on Taylor v. Pacific Container Co., 148 Cal.App.2d 505, 306 P.2d 1049, which noted an erroneous instruction, apparently making not only failure to look but failure to see negligence as a matter of law. Under the circumstances existing in the McDowall case,[1] this court said it would follow the holding that the question of whether one who looks see all that he should see is one of fact for the jury. In the instant case where it clearly appears that giving the evidence its full probative force, together with all reasonable inferences deducible therefrom (which of course includes whether defendant should have seen the bicycle rider at an earlier time), it fails to establish a claim, there is no basis for reversal.

Since we hold that there is no evidence of defendant's negligence and that the court was therefore justified in directing a verdict for the defendant, there is no occasion to discuss the question of contributory negligence or the last-clear-chance doctrine, which under certain conditions operates to relieve a plaintiff's negligence if notwithstanding this defendant could have avoided the accident.

Affirmed.

Mr. Justice McINTYRE, dissenting.

I do not, of course, pretend to say defendant was in fact negligent. The question before us is whether the jury should have been allowed to decide whether defendant was or was not negligent.

According to admissions of the automobile driver and other testimony favorable to the boy, Mrs. Petrossi was driving toward the east in the early morning, with

---

1. Plaintiff had been struck by defendant at night when defendant's car was making a turn into a driveway entrance to some lots. There was testimony that new and powerful street lights at either end of the block were good and adequate; pedestrians could be seen in the middle of the block from these lights alone; there was a photograph of the area in evidence which showed the entire area to be clear, open and free from depressions; the area appeared to be free from trees or objects which could cause shadows and there were no weeds or vegetation which could produce a camouflaging effect.

the sun shining brightly and reflecting on the automobile hood; sunglasses were required; she was going 25 miles per hour; she topped the crest of a hill, after which she had an unobstructed view of the intersection where plaintiff was struck, for a distance of at least 100 feet; the intersection was in a residential area; and defendant knew children lived in the vicinity.

The plaintiff was riding a bicycle toward the north, which would be from defendant's right. Through some trees on her right, defendant could see well into plaintiff's street. She had a wholly unobstructed view into plaintiff's street for a distance of 40 feet from the intersection, without looking through the trees.

As to whether she tried to look through the trees, defendant testified: "No, I didn't look directly through the trees * * *." She also admitted she would have been able to see through the trees if she had been going less than 25 miles per hour.

Being shown a picture of the intersection area at the time of trial, the defendant admitted a boy on a bicycle could be seen back from the intersection without looking through trees. In fact, a witness who had been driving about "two car lengths" behind Mrs. Petrossi testified, when he was about 70 feet from the intersection, he saw the bicycle rider about ten feet from the intersection.

Despite this witness' ability to see the boy, defendant claims she did not see him until he entered the intersection. A lady friend riding with her claims she did not see plaintiff until he was less than ten feet from the point of impact and out in the intersection. The ladies admit they were talking as they approached the intersection.

It was for the jury and not for the court to decide whether by proper lookout Mrs. Petrossi should have seen plaintiff before she did. See McDowall v. Walters, Wyo., 360 P.2d 165, 169, rehearing denied 361 P.2d 528; and Stowers v. Carp, 29 Ill.App. 2d 52, 172 N.E.2d 370, 375–376.

In Feltner v. Bishop, Wyo., 348 P.2d 548, 550, it was said a vehicle driver must be aware that children may be heedless of their safety, especially in areas where children are likely to be found; and that a driver in such cases must constantly exercise the greatest care possible, even to anticipating a child may unexpectedly dart out in front of the driver's vehicle. Our court held, in that case, it is for the trier to determine whether proper care was in fact exercised.

A motorist proceeding through a residential or thickly populated area where children are likely to be has a duty to exercise a higher degree of care than under ordinary circumstances. Giangrosso v. Schweitzer, 10 La.App. 777, 123 So. 127, 128; Day v. Johnson, 265 App.Div. 383, 39 N.Y.S.2d 203, 207; Bulger v. Olataka Yamaoka, 111 Wash. 646, 191 P. 786, 787.

In Hinsch v. Amirkanian, 7 N.J.Misc.R. 274, 145 A. 232, it was held a speed of 22 to 25 miles per hour in a crowded residential area was sufficient to justify an inference of negligence. See also Butler v. Allen, 233 N.C. 484, 64 S.E.2d 561, 562–563.

Thus, Mrs. Petrossi's speed of 25 miles per hour, coupled with her failure to see the Iglehart boy before he entered the intersection, should have gone to the jury for a determination of whether she maintained a proper lookout and otherwise exercised proper care for the circumstances present.