**Rick DeJULIO, as Personal Representative of the Estate of Eric J. DeJulio, Appellant (Plaintiff),**

**v.**

**Joe W. FOSTER, Appellee (Defendant).**

**No. 85–164.**

Supreme Court of Wyoming.

March 4, 1986.

Jack R. Gage, Cheyenne, for appellant.

George E. Powers of Godfrey & Sundahl, Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

Twelve-year old Eric DeJulio was killed when he was run over by a truck driven by appellee Joe Foster. As personal representative of Eric's estate, his father, appellant Rick DeJulio brought suit for damages under the wrongful death act, §§ 1–38–101 and 1–38–102, W.S.1977 (Cum.Supp.1985). From a judgment entered pursuant to a jury verdict in favor of appellee, appellant now appeals.

We affirm.

Appellant raises the following issues:
1. "The judgment is clearly erroneous and against the great weight of the evidence.
2. "Did the trial court commit reversible error when it refused to give a proffered proper lookout instruction, Wyoming Pattern Jury Instruction 7.03?

3. "The trial court committed reversible error by refusing to give plaintiff's proposed jury instruction No. 10.

4. "The jury was guilty of misconduct by failure to follow the court's instructions.

5. "The trial court was given an opportunity to direct the verdict or correct the erroneous result by granting a new trial or a judgment NOV.

6. "Did the trial court err when it refused to allow evidence that the surviving parents of the decedent and only child, Eric DeJulio, are unable to have children?"

Appellee restates the issues as follows:

1. "Was the jury's verdict of no negligence supported by sufficient evidence or should this Court substitute its judgment for that of the trier of fact?

2. "Was the proper lookout instruction a correct statement of law, tailored appropriately to the particular facts and circumstances of this case?

3. "Was the Trial Court's decision to refuse Appellant's 'presumption of love of life' instruction a proper decision within the discretion of the Trial Court and did the refusal result in any prejudice to Appellant?

4. "Was there any evidence of jury misconduct?

5. "Did the Trial Court properly deny Appellant's motions for directed verdicts and motion for post trial relief in the form of a judgment N.O.V. and/or a new trial?

6. "Was the Trial Court's decision to exclude evidence of the surviving parents' infertility an appropriate exercise of the Trial Court's discretion and did this refusal result in any prejudice to Appellant?"

On August 16, 1982, Eric and appellee, Eric's great-uncle, were checking windmills and cattle on appellee's ranch in Laramie County, Wyoming. With them was Eric's second cousin, Kelly Tegeler. As they were driving back to the ranch house they spotted a coyote north of the road, and at the boys' urging appellee stopped the truck. The boys got out of the cab and climbed up onto the rear bumper to look for the coyote. It was not in sight, and therefore, appellee decided to back up the truck a short distance to get a better view. Appellee climbed back into the cab, but before backing up, turned and saw both boys standing on the rear bumper holding onto the tailgate. He then began backing up, and as he did so, he turned forward momentarily to look for oncoming traffic. Almost immediately, he felt a bump as if he had run over something. He stopped the truck and climbed out of the cab to see what it was. At that point, only Kelly was standing on the rear bumper. Appellee asked him where Eric was, and he said he did not know. Appellee then discovered Eric lying on the ground beneath the truck between the front and rear tires on the passenger side, obviously critically injured. Appellee picked him up, placed him in the cab and quickly drove the four miles to the nearest telephone. When the ambulance arrived Eric was dead.

On July 18, 1984, appellant filed a complaint in the District Court of Laramie County, Wyoming, alleging that appellee negligently drove his automobile, which negligence proximately caused the death of Eric DeJulio. The case was tried before a twelve-person jury; appellee was the only witness called by appellant to testify to the circumstances of Eric's death. At the appropriate times throughout the trial appellant moved for a directed verdict on the issue of Eric's negligence and on the issue of appellee's negligence. The motions were denied and the case submitted to the jury.

On May 9, 1985, the jury rendered a verdict for appellee. Judgment on the verdict was entered May 16, 1985; on May 22 appellant asked the court to set aside the verdict and judgment and grant a new trial, or in the alternative, modify the judgment. An order denying the motion was filed on June 26, 1985.

I

■ In the first issue appellant claims that the jury's verdict is clearly erroneous

and against the great weight of the evidence. As appellant recognizes, when dealing with questions of fact, this court will not ordinarily substitute its judgment for that of the jury. *Rissler & McMurray Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25 (1977). As a reviewing court, we assume the evidence of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may reasonably be drawn from it. *Landmark, Inc. v. Stockmen's Bank & Trust Company*, Wyo., 680 P.2d 471 (1984). So long as there is sufficient evidence upon which the jury could rationally base its findings, such findings will not be adjusted in any way by this court. *Thomasi v. Koch*, Wyo., 660 P.2d 806 (1983). We will rarely accept the invitation to place ourselves in the position of a substitute jury.

Despite appellant's awareness of these standards of review, he argues that in the present case we have a duty to examine the record and reach our own independent conclusion from the evidence contained therein. He bases his claim on the rule that where evidence is uncontroverted, the findings in the trial court may be treated as legal conclusions, reversible by this court, and where such evidence admits of only one conclusion, a contrary one may not stand. *Murphy v. Petrolane Wyoming Gas Service*, Wyo., 468 P.2d 969 (1970). We do not find that rule to be controlling here. Appellant's assertion presumes that the evidence presented as to the circumstances of Eric's death was conclusive. We cannot agree. That appellee was the only witness to testify to the circumstances of Eric's death does not necessarily lead to the conclusion that his testimony was dispositive.

On the basis of his testimony appellant argued to the jury that appellee was negligent and that his negligence caused the death of Eric DeJulio. On the basis of the same testimony, appellee argued that he was not negligent and that his acts were not the cause of Eric's death. We are not willing to say that either position is correct as a matter of law. The evidence presented was susceptible of more than one conclusion. Either of two reasonable inferences could be drawn from it. Therefore, it was proper for the jury to determine which of the two, if either, was the more reasonable or probable. *Bocek v. City of Sheridan*, Wyo., 432 P.2d 893 (1967). Based on the evidence presented, the jury found that appellee was not negligent. We are not prepared to say that the finding was clearly erroneous or contrary to the great weight of the evidence. That we might have reached a different result is not grounds for overturning a jury verdict. *Doenz v. Garber*, Wyo., 665 P.2d 932 (1983).

## II

■ Before trial appellant submitted the following proposed jury instruction:

"The law provides that any person driving a motor vehicle on a public highway shall keep a proper lookout for other persons using the highway. By a 'proper lookout' is meant that lookout which would be maintained by an ordinarily careful person in light of all present conditions and those reasonably to be anticipated.

" 'Proper lookout' includes a duty to see objects in plain sight and a driver is bound to see reasonably that which is open and apparent and he must take knowledge of obvious dangers. This duty is not merely one of looking, but of observing which imposes upon a motorist the necessity of being observant as to the traffic and general situation."

The court modified appellant's proposed instruction as follows:

"The law requires that any person using a public highway shall keep a proper lookout. By a 'proper lookout' is meant that lookout which would be maintained by an ordinarily reasonable and prudent person in light of all present conditions and those reasonably to be anticipated."

■ Appellant now contends that the court improperly modified the instruction, thereby committing reversible error. More specifically, appellant claims that the modification resulted in an incomplete statement of applicable Wyoming law. Again, we are not persuaded by appellant's claim. We have said that the function of jury instructions is to give the jury guidance regarding the law of the case. *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, Wyo., 664 P.2d 27 (1983). The trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case. *Matter of MLM*, Wyo., 682 P.2d 982 (1984). The trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law. *Cervelli v. Graves*, Wyo., 661 P.2d 1032 (1983).

Applying these standards to the instructions given in this case, we find no prejudicial error requiring a reversal. The instruction, as modified, adequately informed the jury that anyone using a public highway must keep a proper lookout, an entirely adequate statement of applicable Wyoming law. The instruction then defines proper lookout as that lookout which would be maintained by an ordinarily reasonable and prudent person in light of all present conditions and those reasonably to be anticipated. We fail to see how that instruction could be said to have misled or confused the jury. It fully and clearly defined the duty of appellee to keep a proper lookout. Any additional explanation of that duty was unnecessary, and therefore properly deleted.

As further support of our finding that the trial court did not err, we point to the rule that a party is not prejudiced when a refused instruction is covered by other instructions which have been given. *Banks v. Crowner*, Wyo., 694 P.2d 101 (1985); *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981); *Zanetti Bus Lines, Inc. v. Logan*, Wyo., 400 P.2d 482 (1965).

In the present case, in addition to the proper lookout instruction, the trial court gave the following instructions pertaining to appellee's duty:

"Instruction No. 17

"It is the duty of every person using a highway, as a driver of a vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to use like care to avoid an accident from which an injury might result."

"Instruction No. 18

"Violation of a statute is evidence of negligence. If you determine that a party violated a statute, ordinance or code provision on the occasion in question and that the violation was a direct cause of the occurrence, then you may consider that fact together with all other facts and circumstances in evidence in determining whether or not the party was negligent at the time of the occurrence."

"Instruction No. 20

"You are instructed that W.S. § 31-5-226 provides as follows:

" '(a) The driver of a vehicle shall not back the vehicle unless the movement can be made with safety.' "

The combined effect of these instructions was to fully and clearly inform the jury of the nature and extent of appellee's duty. Under these circumstances there was no prejudice, and thus, no reversible error.

III

■ We find appellant's third contention equally unpersuasive. Appellant offered, and the trial court refused, the following proposed instruction:

"You are instructed that there is a presumption that the decedent (Eric DeJulio) was exercising due and proper care for the protection of his person and the preservation of his life at the time of the accident. This presumption arises from the instinct of self-preservation and the disposition of persons to avoid personal

harm. This presumption is not conclusive, but is a matter to be considered by the jury, in connection with all the other facts and circumstances of the case, in determining whether or not Eric DeJulio was guilty of negligence at the time of the accident."

Although appellant neglects to cite any authority in support of the presumption contained in his proposed instruction, this court has recognized the validity of the presumption that in the absence of eye witnesses to the accident or other evidence sufficient to dispel or rebut the presumption, the decedent, acting on the instinct of self-preservation, was exercising ordinary care. *Gish v. Colson*, Wyo., 475 P.2d 717 (1970). However, the presumption becomes important only when negligence is found on the part of the defendant. Absent such a finding, the question of the decedent's due care does not arise. In the present case the jury found that appellee was not negligent; therefore, the question of Eric DeJulio's due care never arose. It has always been incumbent upon the party claiming prejudicial error to show that absent such error a different result would have occurred. *Walton v. Texasgulf, Inc.*, Wyo., 634 P.2d 908 (1981). Even assuming error was committed in instructing the jury, we fail to see how such error affected the result of this case since the question of comparing the parties' relative negligence was never before the trier of fact.

### IV

Appellant next contends that the jury was guilty of misconduct by failing to follow the court's instructions. Appellant bases his claim in part on the jury's alleged disregard of the following instruction:

"Instruction No. 25

"You should not be governed or influenced by any prejudice or feeling either in favor or against the plaintiffs-claimant or in favor of or against the defendant. In arriving at your verdict in this case you should and must be governed solely by the evidence given from the witness stand and by the instructions of this court."

According to appellant, the jury demonstrated its intent to disregard the instruction by submitting the following questions to the court after deliberating for only fifteen minutes:

1. "The picture of the truck does not clearly show how wide the bumper is that the boys were standing on. How wide is that bumper? In inches.

2. "The testimony on the pump that fell over—it was spilling out oil—did that pump fall forward? Did the oil go on the bumper?

3. "Did he look back after he was in the cab or before he got in the cab?"

In response the court instructed the jury to:

" * * * [D]etermine the issues of fact in this case from the testimony of witnesses who have been presented here from the witness stand and by means of video depositions and from the evidence which has been admitted by the Court. * * *

"As to some of the questions you have presented there is no answer because there was no evidence presented. As to other questions you as the judges of the facts should continue to consult together to resolve these fact issues."

Based on these events and the jury's ultimate finding of no negligence, appellant contends that the jury ignored the evidence that had been introduced and sought to find additional evidence on its own in disregard of the court's instruction to do otherwise. We will not assume that the jury disregarded an instruction. *Goggins v. Harwood*, Wyo., 704 P.2d 1282 (1985); and *State Highway Commission v. Peters*, Wyo., 416 P.2d 390 (1966). And we cannot assume that the jury ignored the evidence. For these reasons we find no merit in appellant's claim.

As further evidence of misconduct appellant cites the jury's failure to assess damages or pecuniary loss. We cannot follow appellant's claim. Obviously, damages need only be assessed if liability has been

established. Here, the jury found no liability; therefore, an assessment of damages was unnecessary.

## V

As indicated previously, at the appropriate times throughout the proceedings, appellant moved for a directed verdict, a judgment notwithstanding the verdict, and a new trial. He now contends that the motions were improperly denied. It is well established that questions of fact should be submitted to a jury unless reasonable men can draw but one inference from the evidence. *Brockett v. Prater*, Wyo., 675 P.2d 638 (1984). As we have already indicated, the questions raised in the present case were not susceptible to but one inference; therefore, appellant's motions for a directed verdict were properly denied.

It is also well-established that a trial court has broad discretion when ruling on a motion to set aside a judgment or grant a new trial, and the decision will not be overturned on appeal absent an abuse of discretion. *Stevens v. Murphy*, Wyo., 680 P.2d 78 (1984); and *Cody v. Atkins*, Wyo., 658 P.2d 59 (1983). Appellant fails to demonstrate any grounds upon which the relief sought should be granted. We find no abuse of discretion; therefore, the trial court properly denied appellant's motion for judgment notwithstanding the verdict or a new trial.

## VI

The final issue raised by appellant concerns the trial court's refusal to admit evidence of medical expenses incurred by the DeJulios in their effort to conceive a second child. Appellant has proposed a rather cabalistic theory of damages and its imprimatur is suspect. As indicated, however,

the jury found no liability, and therefore an assessment of damages was unnecessary. Having affirmed the jury's finding of no liability, we decline to address the issue of damages.

For all the reasons stated above, we affirm.

URBIGKIT, Justice, dissenting.

Although recognizing the generally accepted validity of the court's discussion, I would respectfully disagree as to the affirmation of the trial court's denial of directed verdict, judgment notwithstanding the verdict, or the motion for new trial, as requested by appellant as original plaintiff in this back-up and run-over, adverse-verdict case. Consequently, I dissent.

The pervasive criticism of the tort system of today is emotionally premised on contorted examples of extremity in jury-verdict result.[1]

The subject should be first analyzed under the principle of probability and the rule of possibility.[2] Defined in logic or statistics, it equates to the realization that with sufficient occurrences nearly everything will happen sooner or later (principle of probability), and nearly anything can happen at any given time, no matter how unlikely (rule of possibility).

With the proliferated litigation of today, the justice delivery system is challenged to recognize that the principle of probability and the rule of possibility also apply to jury decisions. The rogue jury, the confused jury, and the overwhelmed jury are explicable and existent. Trial ability with expertise, method and preparation is not always equalized by the sophistication of juries in contemplation and conclusion.

1. Compare philosophic discussions, Kalven, *The Dignity of the Civil Jury*, 50 Va.L.Rev. 1055 (1964); Tavris, *The Law of an Unwritten Law: A Common Sense View of Jury Nullification*, 11 Western State Univ.L.Rev. 97 (1983); Alexander, *Civil Juries in Maine: Are the Benefits Worth the Costs?*, 34:1 Maine L.Rev. 63 (1982), in the context of the oft-repeated comments of the Chief Justice of the United States.

2. A rule is precise, is not a matter of weight, and is declared to be valid by the authority. A principle is not a matter of relative specificity and is asserted and cannot be declared. Fletcher, *Two Modes of Legal Thought*, 90 Yale L.J. 970, 978 (1981).

The present unmitigated challenge to the jury system is misplaced. However, resort to responsibility would be well decided. This is to say that the judicial responsibility to reasonable justice is not always adequately recognized in contemplation of the "sanctity of the jury verdict" where the result lacks rational justification.

The arena of reasonable result can be equalized to approximate justice, and, if exceeded, then system self-correction should be afforded in order to defend the institution in accomplishing its principal and generally successful societal responsibility.

Although other subjects are suitably considered in the context of the justice system self-correction, this case of *DeJulio v. Foster* comes to issue from the defendant's verdict in a wrongful-death lawsuit.

In contemplation of jury fact-finding, there are four ways for jury self-correction:

(1) Motion for summary judgment, directed verdict, or judgment notwithstanding the verdict in favor of defendant, in cases where reasonable persons "normally" would not differ as to the evidence sufficiency to find the absence of claimed liability. *Erickson v. Magill,* Wyo., 713 P.2d 1182 (1986).

(2) Remittitur, where the jury verdict is excessive in dollar amount. *Ford Motor Co. v. Kuhbacher,* Wyo., 518 P.2d 1255 (1974); *Union Pacific Ry. Co. v. Hause,* 1 Wyo. 27 (1871).

(3) Additur, where the jury verdict is inadequate in dollar amount. *Venes v. Heck,* 642 F.2d 380 (10th Cir.1981); *Douglas Reservoirs Water Users Ass'n v. Cross,* Wyo., 569 P.2d 1280 (1977) (nonjury).[3]

(4) Directed verdict on liability, or judgment notwithstanding the verdict, or a new trial in favor of plaintiff, where reasonable persons "normally" would not differ as to the evidence sufficiency to find the existence of claimed liability.[4] *Brown v. Sievers,* Wyo., 410 P.2d 574 (1966).

Inconsistency of applied review and absence of judicial reactivity exist in the probability/possibility circumstances in all regards except summary judgment, and otherwise equivalency of result surely cannot be found in a case-by-case analysis, whether it is a ten-plus billion-dollar Texaco debacle or the verdict for defendant in this case. The justice institution is unbalanced in favoring summary judgment and nonrecovery disposition. *Iglehart v. Petrossi,* Wyo., 409 P.2d 964 (1966).

Inconsistencies, but more particularly uncertainties, spawn trial required resolution. A realistic demonstration and understanding of the contended parameters of probability/possibility are excellent medicine to cure an adventuresome trial proclivity.

The deserving plaintiff who fails to recover or recovers inadequately is equally denied justice, as is the case where an excessive or undeserved settlement or disposition is achieved.

**3.** A significant body of law is developing as considering both additur and remittitur, which includes evolving principles and rules. Note, *Civil Procedure—Abuse of Discretion Standard—Worthington v. Bynum,* 18 Wake Forest L.Rev. 1111 (1982); Carlin, *Remittiturs and Additurs.* 49 W.Va.L.Rev. 1 (1942); Commentary, *Remittitur Practice in Alabama,* 34 Ala.L.Rev. 275 (1983); Comment, *Appellate Remittitur,* 33 Mo. L.Rev. 637 (1968); *Pippen v. Denison, Division of Abex Corporation,* 66 Mich.App. 664, 239 N.W.2d 704 (1976); *Pearl River Valley Water Supply District v. Brown,* Miss., 202 So.2d 919 (1967); *Earl T. Browder, Inc. v. County Court of Webster County,* 145 W.Va. 696, 116 S.E.2d 867 (1960); *Lent v. Huntoon,* 143 Vt. 539, 470 A.2d 1162 (1983); *Hardy v. Ruhnke,* 47 N.J. 10, 218 A.2d 861 (1966); *Genzel v. Halvorson,* 248 Minn.

527, 80 N.W.2d 854 (1957); *Dorsey v. Barba,* Cal.App., 226 P.2d 677 (1951); *United States v. 93,970 Acres of Land,* 258 F.2d 17 (7th Cir.1958), rev'd on other grounds 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959); *Jehl v. Southern Pacific Company,* 66 Cal.2d 821, 59 Cal.Rptr. 276, 427 P.2d 988 (1967).

**4.** It is recognized that courts have applied a different standard for granting a new trial as more lenient when compared with a judgment notwithstanding the verdict. *Cody v. Atkins,* Wyo., 658 P.2d 59 (1983); *Tidewater Oil Co. v. Waller,* 302 F.2d 638 (10th Cir.1962); *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941).

We have, in this case, a relatively simple fact situation, as amply addressed by the majority opinion. Defendant, without looking to the rear, backed up a vehicle while a 12-year-old boy was apparently standing on the back bumper and who then jumped or fell off and was run over and killed. The defendant, as the driver, was a nice guy, a relative of the decedent, and a respected citizen. The boy was dead.

If one hundred juries heard this case, one would wonder how often a jury verdict would result in favor of the defendant.

Clear evidence of negligence exists (see rule of law stated in *Fegler v. Brodie*, Wyo., 574 P.2d 751 (1978)):

(1) Backing up without looking to that direction. *Davies v. Dugan*, Wyo., 365 P.2d 198 (1961).

(2) Backing up with young boys standing on the back bumper of the pickup. *Holstedt v. Neighbors*, Wyo., 377 P.2d 181 (1962).

(3) Backing up without knowing exactly where or how the boys were physically located on the back of the pickup. Cf. *McDowall v. Walters*, Wyo., 360 P.2d 165, reh. denied 361 P.2d 528 (1961).

(4) Backing up without looking at the terrain to determine the scope of danger to either passengers or vehicle.[5] *Blakeman v. Gopp*, Wyo., 364 P.2d 986 (1961); *Gilli-*

*land v. Rhoads*, Wyo., 539 P.2d 1221 (1975).

Instead of the actual conduct from which the death occurred, at least three distinct things should have been done by the driver to avoid negligence and the resulting death:

(1) Require safer vehicle location for children passengers and particularly so for reverse-direction travel;

(2) Physically determine location of passengers before starting to back up;

(3) Watch both boys and route for danger to passengers, in exercise of an obviously dangerous maneuver with young passengers on back of pickup, by maintaining a proper lookout.

The pervasive duty of lookout comes from managing the most destructive instrument of modern society, the motor vehicle.

Applying a reasoned-justice test of judicial responsibility, I would find "an irrational result" and consequent error in the trial court's failure to grant summary judgment or judgment notwithstanding the verdict or finally a new trial after jury verdict. I cannot find even an inference from the record of due care, and would assert that the court in this case fails responsibility in desired recognition of the intervention obligation in the occurrence of extreme results as factored in the probability/possibility

---

5. Defendant testified:

"Q. * * * And then as I understand it, Kelly Tegler and Eric DeJulio got on the back bumper or stood on the back bumper; is that correct?
"A. Yes.
"Q. After you righted the pump jack, you got back in the cab; is that correct?
"A. Yes.
"Q. It's my understanding that you then backed up, but you were watching to the east for any vehicles that might be approaching from the east; is that correct?
"A. They were both standing on the bumper with both hands on the tailgate before I started to back up. And then I looked to make sure there was no vehicles coming from the east.
"Q. So in fact when you did back up you weren't looking backwards; is that correct?
"A. That's correct.

"Q. You didn't look in either—as you backed up, as I understand it, you didn't look in either the rearview mirror in the cab or in either of the side mirrors; is that correct?
"A. I don't think I did.
"Q. And then however it happened you backed over Eric; isn't that correct?
"A. Yes.
"Q. So you don't know where Eric was at the time that you backed over him; isn't that correct? You don't know if he was getting in the bed of the truck; isn't that correct?
"A. I don't know that, no.
"Q. And you don't know if he had gotten off and was standing on the ground; isn't that correct?
"A. I don't know that.
"Q. And you don't know whether or not he may have fallen off; isn't that correct?
"A. That's correct."

principle in jury conduct. Under the circumstances of this negligence case, a new trial should be granted. *Vassos v. Roussalis*, Wyo., 625 P.2d 768 (1981); *Maxted v. Pacific Car & Foundry Co.*, Wyo., 527 P.2d 832 (1974); 2 Blashfield Automobile Law and Practice § 104, revised 3d ed. See *Stowers v. Carp*, 29 Ill.App.2d 52, 172 N.E.2d 370 (1961).

Error should also be found in the failure to give the instruction submitted by appellant on lookout, since it was intrinsic to the case presentation in the actual facts that the defendant did not even look to judge the scope of danger. Blashfield, supra, §§ 104.3, 104.4 and 104.5.

The case should be reversed, and a new trial granted.