Agnes M. JONES, Appellant (Plaintiff),

v.

SHERIDAN COUNTY SCHOOL DISTRICT # 2 and Jerry M. Willette, Appellees (Defendants).

No. 86–137.

Supreme Court of Wyoming.

Jan. 12, 1987.

Charles E. Hamilton of Hamilton Law Associates, Riverton, for appellant.

Michael K. Davis of Redle, Yonkee & Arney, Sheridan, for appellees.

Before BROWN, C.J., and THOMAS *, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellant Agnes M. Jones brought this negligence action against appellees Sheridan County School District Number Two and Jerry M. Willette seeking damages for injuries received in an automobile accident. A jury found that the parties were equally at fault, and judgment was entered for the appellees. Appellant claims that the verdict was not supported by sufficient evidence and that the trial court erred in denying appellant's motions for directed verdict, judgment notwithstanding the verdict, and a new trial.

We affirm.

This case arose from an accident between an automobile driven by appellant

and a thirty-five foot GMC school bus operated by appellee Jerry Willette, an employee of appellee Sheridan County School District Number Two. The accident occurred at the intersection of Main Street and Federal Boulevard in Riverton, Wyoming, on April 7, 1984 at about 11:00 a.m. Main is a four-lane street having a double left-hand turn lane which permits two lanes of traffic to turn left onto the two northbound lanes of Federal Boulevard. At the time of the accident, both appellant's car and the bus were turning north onto Federal Boulevard from Main Street. Mr. Willette, driving the GMC bus, had pulled up to the red light and stopped in the inside left-turn lane, signaling a left turn. He anticipated making a wide turn to avoid running over the concrete median which divided the east and west lanes of Main Street. He checked his mirrors and looked to his right to make sure that no one was in the outside left-turn lane. He saw no cars in that lane. When the light changed, he proceeded to make his turn onto the inside northbound lane of Federal Boulevard, moving at about five to six miles per hour.

Meanwhile Mrs. Jones, who was also traveling east on Main Street, arrived at the intersection when the light was changing. Using the outside left-turn lane, she also turned north onto Federal Boulevard and apparently attempted to pass the bus as it made its turn. As the two vehicles went around the corner, Mr. Willette swung the front of the bus beyond the center line dividing the two northbound lanes of Federal Boulevard. In doing so, he struck Mrs. Jones' vehicle causing damage to the two doors on the driver's side of the automobile.[1]

Sergeant Dale Adams and Officer Edward McAuslan conducted an on-the-scene investigation of the accident. When questioned by the investigating officers, Mr.

---

* Chief Justice at time of oral argument.

1. When the vehicles came to rest, the right front corner of the bus was approximately six feet, one inch over the center line, and the right rear corner of the bus was approximately four feet over the center line. The right front corner of the bus was approximately eight feet, nine inches from the right curb, while the right rear corner was approximately ten feet, seven inches from the curb. The automobile driven by Mrs. Jones was about five feet wide.

Willette stated that he did not see the automobile driven by Mrs. Jones prior to making his turn and that he "probably used some of the [outside] left-turn lane to complete the turn as * * * his vehicle could not maneuver without doing so." No traffic citations were issued, as Sergeant Adams concluded that Mr. Willette "made the left turn as near[ly] as practicable to the inside lane" and that "[t]his is a situation where no driver is at fault and due caution, foresight and attention were not completely used by either party."[2]

Mrs. Jones filed this negligence action against Mr. Willette and the school district, claiming that she sustained back injuries in the accident. After both sides presented evidence at trial, Mrs. Jones moved for a directed verdict on the issue of liability:

"MR. HAMILTON: * * * I would move for a directed verdict on the issue of liability in favor of the plaintiff.

"THE COURT: Do you have any objection to that?

"MR. DAVIS: I do, Your Honor. I believe that this is a comparative fault state, and that in this situation, although perhaps the jury will find the greater part of the fault falls on Mr. Willette, there's also an area there where a reasonable juror could determine that Mrs. Jones could also have taken actions reasonably to avoid the accident and I believe they should be allowed to decide that.

"THE COURT: Well, I don't agree with you, but I'll give the jury the whole thing and then when they come back with the verdict what will happen is, depending on what the verdict is, the Court can then adjust the verdict as it believes the law would require. Then if you don't like what I can do you can take it to the Supreme Court and they can reinstate the jury verdict if they want to, and we then won't have to try it again. That's what we'll do."

Prior to closing arguments the jury was given the following instructions, among others:

"Wyoming law provides that whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, a vehicle shall be driven as nearly [as] practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."

"Wyoming law provides that the driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle. Whenever practicable, the left turn shall be made to the left of the center of the intersection and so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as the vehicle on the roadway being entered."

"Wyoming law provides that any person driving a motor vehicle on a public highway shall keep a proper lookout for other persons using the highway. By a 'proper lookout' is meant that lookout which would be maintained by an ordinarily careful person in light of all present conditions and those reasonabl[y] to be anticipated.

" 'Proper lookout' includes a duty to see objects in plain sight and a driver is bound to see reasonabl[y] that which is open and apparent and he must take knowledge of obvious dangers. This duty is not merely one of looking, but of observing which imposes upon a motorist the necessity of being observant as to the traffic and general situation."

In his closing argument, counsel for appellees argued that Mr. Willette needed to use part of the outside lane to make the turn and that he had taken all reasonable steps to ensure that his turn could be made with safety. Counsel also argued that Mrs.

---

**2.** The investigating officers could not determine the "point of impact," which Officer McAuslan defined as "[t]he actual point where the collision occurs."

Jones failed to keep a proper lookout and that an allocation of 50 percent negligence to each driver was appropriate.

The jury was apparently persuaded by appellees' closing argument, as it returned a verdict apportioning 50 percent of the fault to each party. Under our type of comparative negligence—§ 1-1-109, W.S. 1977—appellee who caused 50 percent of the loss pays nothing, and appellant who was responsible for just 50 percent of her own damage recovers nothing. Appellant timely filed a motion for JNOV or a new trial on the ground of insufficient evidence to support the jury's allocation of fault. This motion was denied, and appellant now appeals from the judgment and the order denying her motions for directed verdict, JNOV, and a new trial.

As we recently stated in *Reese v. Dow Chemical Company*, Wyo., 728 P.2d 1118 (1986), we use the following standards in reviewing the sufficiency of the evidence to support a jury verdict:

" '[W]e assume the evidence in favor of a successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably and fairly drawn from it. In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflicts therein and drawing its own inferences if more than one inference is permissible. Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive.' " Quoting *Crown Cork & Seal Company, Inc. v. Admiral Beverage Corporation*, Wyo., 638 P.2d 1272, 1274-1275 (1982).

In reviewing a trial court's ruling on a motion for directed verdict or JNOV, we must determine whether "there can be but one conclusion reasonable persons could have reached." *Erickson v. Magill*, Wyo., 713 P.2d 1182, 1186 (1986).

We conclude that the facts brought out at trial would allow reasonable persons to reach different conclusions and that the conclusion reached by the jury was supported by substantial evidence. The facts show that Mr. Willette encroached into Mrs. Jones' lane by approximately six feet, and the jury found that this conduct constituted negligence. Apparently the jury also concluded that if Mrs. Jones had kept a proper lookout, she would have anticipated the wide turn of the thirty-five foot bus and could have avoided the accident by either slowing down and allowing the bus to proceed or by using the far right side of her lane to avoid the collision. The jury had before it a police report introduced by appellant in which Officer Adams concluded, after interviewing the two drivers, that neither party exercised "due caution, foresight, and attention." We cannot say the inferences drawn by the jury were unreasonable. Although we might have reached a different verdict, that alone is not a sufficient ground for overturning the verdict of the jury. *DeJulio v. Foster*, Wyo., 715 P.2d 182, 185 (1986).

Appellant contends that the trial court erred in refusing to grant a new trial because the jury verdict "fail[ed] to administer substantial justice to the parties in the case." Rule 59(a), W.R.C.P., lists eight grounds upon which a new trial may be granted. In essence, appellant seeks a new trial on the ground that the verdict was not supported by sufficient evidence. Rule 59(a)(6), W.R.C.P. We have already addressed this issue, and we conclude that the trial court's ruling on appellant's motion for a new trial did not constitute an abuse of discretion, as it was within the bounds of reason under the circumstances. *Duffy v. State*, Wyo., 730 P.2d 754 (1986).

Finally, appellant urges that the only possible explanation for the jury's verdict is that the jury was "influenced by the massive publicity campaign which had been promulgated by the insurance companies prior to and during the time of the trial." We can find nothing in the record to support this claim, and we decline to speculate

on the effect, if any, of such publicity on this trial.

Affirmed.

URBIGKIT, Justice, dissenting.

Philosophically, as discussed in *DeJulio v. Foster*, Wyo., 715 P.2d 182 (1986), maintenance and continuation of the trial jury process in the American system of civil controversy adjudication is dependent upon the rationality and reasonableness of the results achieved. Protection of society from the infrequently occurring but unjustified or irrationally derived verdict, through the exercise of judicial oversight, is indispensable to preserve the civil trial jury within the justice delivery mechanism.

Rationally, practically, factually, and mechanically, there is no way that Mrs. Jones could have been 50 per cent negligent in the incident when the right front corner of the bus encroached from the designated driving lane into the adjoining lane, to occupy part of both, where it then struck the center of the side of her passenger automobile as she drove in her proper traveling lane.

Lacking a more efficacious characterization, simplistically, the bus driver drove the large vehicle into the passenger car in failing to properly and reasonably maneuver the bus on a common and very heavily traveled main intersection in the City of Riverton. Neither looking nor apparently caring, he did what he did.

For the reasons considered in *DeJulio*, more recently discussed in my dissenting opinion in *England v. Simmons*, Wyo., 728 P.2d 1137 (1986), following *Toltec Watershed Improvement District v. Johnston*, Wyo., 717 P.2d 808 (1986), I disagree with the decision of this court. Unfortunately, we fail in both directions: by granting too many summary judgments to obviate resolution by jury trial, and also by failing to afford correction, in the unusual, but nonetheless existent, unjustified jury conclusion. As Justice Hand said, in discussing the reversal of a jury verdict and as he considered a quantitative standard for the measurement of incommensurable factors,

"It is plain * * * that we cannot properly devolve the entire responsibility for a decision upon a jury." *Conway v. O'Brien*, 111 F.2d 611, 613 (2d Cir.1940), rev'd on a gross-negligence criterion, 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969 (1941).

Given the facts here existent, I respectfully dissent from this court's decision to affirm the order denying the plaintiff a directed verdict, judgment notwithstanding the verdict, or a new trial.