**Richard and Chrisanne MEDLOCK, Appellants (Plaintiffs),**

v.

**John MERRICK, Appellee (Defendant).**

No. 89–5.

Supreme Court of Wyoming.

Feb. 8, 1990.

Robert T. Moxley and Jack Gage of Whitehead, Gage & Davidson, P.C., Cheyenne, for appellants.

Rodger McDaniel and Julie Nye Tiedeken of McDaniel and Tiedeken, Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellants Richard Medlock and Chrisanne Medlock appeal the adverse jury verdict and subsequent denial of a motion for a judgment notwithstanding the verdict or alternatively for a new trial of their negligence action arising from a vehicle accident with appellee John Merrick.

We affirm.

The Medlocks state the issues as:

I. Did the trial court commit an error of law or an abuse of discretion in refusing to set aside the jury verdict which found that the defendant John Merrick was not negligent in operating his vehicle when he struck the Plaintiffs' stopped vehicle while the Plaintiffs' vehicle was entirely in its own lane of traffic?

II. Was there sufficient evidence to support the jury's verdict?

III. Did the trial court err in failing to give the Plaintiffs' tendered instruction relating to the Defendant's duty?

IV. Was the jury's finding that the Defendant had not been negligent a conclusion, as a matter of law, that could not be reached by a reasonable man under the evidence?

The respective parties offer extremely different versions of the circumstances leading to this lawsuit. Both agree that on July 26, 1987, Merrick's vehicle collided with the Medlocks' vehicle on a gravel road near Granite Reservoir in western Laramie County, Wyoming. The parties' contentions diverge at that point.

Merrick's evidence reveals that he consumed two cans of beer while he was engaged in strenuous physical activity. Just before the accident occurred, Merrick was driving his vehicle in a westerly direction near the center of the road which was washboarded and had a hill dropping into a curve. He was traveling at a speed of approximately thirty miles per hour. Before approaching the hill, Merrick noticed the Medlocks' vehicle approaching from the other direction. When Merrick pulled his vehicle over to the right to allow the Medlocks' vehicle to pass, his vehicle came in contact with some gravel and became "unstable." Merrick then allowed his vehicle to enter the ditch on his right to avoid a collision with the Medlocks' vehicle. As Merrick attempted to slow his vehicle, something in the ditch forced his vehicle back out into the rear fender of the Medlocks' vehicle. The collision was slight and barely moved the Medlocks' vehicle. Merrick moved his vehicle before the accident scene was investigated. Both the Laramie County sheriff's deputy, who investigated the accident, and a state game warden, who came upon the scene of the accident, testified that, from observing and talking to Merrick, they did not detect any signs of intoxication.

The Medlocks' evidence came primarily from the testimony of Richard Medlock and their accident reconstruction expert. They attempted to show that the impact moved their truck roughly three feet and that

Merrick's vehicle bounced about thirty feet upon impact. Both Richard Medlock and Chrisanne Medlock testified that they smelled alcohol on Merrick's breath. Richard Medlock remarked that Merrick did not appear to be concerned about the accident. The accident reconstruction expert, on the basis of the Medlocks' account of the accident, testified he thought that Merrick's vehicle was traveling on the road at a speed of between forty and fifty miles per hour and that it struck the Medlocks' vehicle at a speed of between twelve and seventeen miles per hour.

In October 1988, a six-member jury heard the case. The jury was given a three-question special verdict form on which to record its decisions in the case. Question number one stated:

1. Do you find that the defendant, John Merrick, was negligent?

Yes___ No___

The jury checked "No" to this question, and the court polled the jury at the Medlocks' request.[1] On October 27, 1988, the court entered a judgment in favor of Merrick.

On October 31, 1988, the Medlocks moved for a judgment notwithstanding the verdict or alternatively for a new trial on the basis of insufficient evidence. On November 4, 1988, the court heard arguments on the motion and denied it, finding that the jury verdict was sustained by sufficient evidence. This appeal followed.

■ Merrick contends that the Medlocks' failure to move for a directed verdict precludes this Court from considering the propriety of the district court's denial of their motion for a new trial. We disagree. A motion for a new trial can be made independently of a motion for a directed verdict or of a motion for a judgment notwith-

standing the verdict. 9 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 2539 (1971). *See also Hall Oil Co. v. Barquin*, 33 Wyo. 92, 237 P. 255 (1925).

A trial court has broad discretion when it is ruling upon a motion requesting a new trial; its decision on the motion will not be overturned absent an abuse of that discretion. *DeJulio v. Foster*, 715 P.2d 182 (Wyo.1986). We have said:

The right of trial by jury includes the right to have the jury pass upon questions of fact by determining the credibility of witnesses and the weight of conflicting evidence. The findings of fact, however, are subject to review by the trial judge who, like the jury, has had the benefit of observing the demeanor and deportment of the witnesses. If he concludes that the evidence is insufficient to support the verdict, he should grant a new trial * * *.

*Long v. Forbes*, 58 Wyo. 533, 534, 136 P.2d 242, 158 A.L.R. 224 (1943) (citation omitted), *quoted in Cody v. Atkins*, 658 P.2d 59, 63 (Wyo.1983). To determine whether the evidence was sufficient to support the verdict, we apply the following standard:

[W]e assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably and fairly drawn from it. In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflict therein and drawing its own inferences if more than one inference is permissible. Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive.

Richard Medlock ........$____
Chris[an]ne Medlock ....$____

Since the jury answered "No" to question number one, it did not answer, nor was it required to answer, questions number two and three.

---

**1.** Questions number two and three were phrased as follows:

2. If your answer to question number 1 was yes, do you find that John Merrick's negligence was a direct cause of the accident?
Yes___ No___

3[.] If your answer to question number 2 is yes, what total amount of damages was sustained by:

*Crown Cork & Seal Company, Inc. v. Admiral Beverage Corp.,* 638 P.2d 1272, 1274–75 (Wyo.1982) (citations omitted), *quoted in Seaton v. State of Wyoming Highway Commission, District No. 1,* 784 P.2d 197, 207–208 (Wyo.1989).

■ Reviewing the evidence under this standard, we hold that substantial evidence exists to support the jury verdict. The jury is the sole judge of the credibility of witnesses, and it is not required to accept a plaintiff's version of the facts. *Kahler v. Martin,* 570 P.2d 720 (Wyo.1977). As long as sufficient evidence exists upon which the jury could base its findings, we will not disturb those findings even if we might have reached a different result. *Jones v. Sheridan County School District # 2,* 731 P.2d 29 (Wyo.1987); *DeJulio,* 715 P.2d 182. Much of the cross-examination of Richard Medlock impeached his credibility. For example, Richard Medlock admitted to giving erroneous information on his army physical form and to making a claim for a veteran's disability for injuries similar to those he claimed to have sustained in the accident which was the subject of this lawsuit. In addition, the Medlocks' expert made his conclusions on the basis of the Medlocks' version of the events. He also testified that the road was defective in its design. Beyond those observations, we will not speculate on the exact rationale, thoughts, or reasoning of the jury in reaching the conclusion that Merrick was not negligent. *Howell v. Garcia,* 747 P.2d 1140 (Wyo. 1987).

■ Although the discretion in deciding whether to grant a new trial goes further than to mere sufficiency of the evidence, *Cody,* 658 P.2d 59, the Medlocks have pointed out nothing beyond a claim of insufficient evidence to show that the trial court abused its discretion. They do, however, attempt to argue for the first time on appeal that Merrick was negligent per se on the basis of an alleged statutory violation. The Medlocks designated only certain portions of the record, no part of which deals with the issue of negligence per se. The Medlocks have the burden to produce a record upon which this Court can decide the issues presented. *Edwards v. Edwards,* 732 P.2d 1068 (Wyo.1987). We do not address issues raised for the first time on appeal. *R.O. Corporation v. John H. Bell Iron Mountain Ranch Company,* 781 P.2d 910 (Wyo.1989). A party is bound by the theory of the case it advanced below. *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.,* 750 P.2d 1324 (Wyo.1988). We will not consider this issue here.

■ The Medlocks offered the following jury instruction, which the trial court refused to use:

> In the Course of these instructions, The Court will define various specific duties with which the parties are charged. If you find from a preponderance of the evidence that a party has violated a duty, then that party is negligent. The effect of such negligence must be evaluated on the basis of all other instructions.

The court refused to utilize this instruction because its content was adequately covered by other instructions. For example:

## INSTRUCTION NO. 4

When the word negligence is used in these instructions, it means the failure to use ordinary care. Ordinary care means the degree of care which might reasonably be expected of the ordinary careful person under the same or similar circumstances. The law does not say how such an ordinary careful person would act. That is for you to decide.

## INSTRUCTION NO. 6

You are instructed that by a preponderance of evidence is meant not necessarily the greater number of witnesses or exhibits. It means the amount of evidence, taken on the whole, which leads the jury to find that the existence of the disputed fact is more probable than its nonexistence.

## INSTRUCTION NO. 8

In this action, the plaintiff has the burden of proving by a preponderance of the evidence the following:

1. That the defendant was negligent;

2. That the negligence of the defendant was a direct cause of the injury and damage to the plaintiff; and

3. The nature and extent of the injuries claimed to have been so suffered, the elements of plaintiff's damage and the amount thereof.

## INSTRUCTION NO. 15

Every person operating a motor vehicle upon a highway shall have the vehicle under reasonable control. A driver may be said to have his car under reasonable control when he is observing other use of the highway and has had the ability to guide and direct the course of the automobile, fix its speed and bring the car to a stop within a reasonable distance. Failure to have such control is evidence of negligence.

A party is not prejudiced when a refused instruction is covered by other instructions which have been given. *DeJulio*, 715 P.2d 182. The Medlocks did not object to any instructions which were given, and the trial court did not err in refusing to use the Medlocks' tendered instruction.

█ The Medlocks' final contention is that the trial court should have found Merrick negligent as a matter of law. We disagree. The mere fact that a collision occurred does not in itself indicate negligence. *Cody*, 658 P.2d 59. Negligence is never presumed from an accident. *De-Wald v. State*, 719 P.2d 643 (Wyo.1986). The question of negligence is ordinarily one for the trier of fact. *DeJulio*, 715 P.2d 182; *Miller v. Hedderman*, 464 P.2d 544 (Wyo.1970).

The Medlocks have failed to demonstrate any grounds upon which the relief sought should be granted. The trial court did not abuse its discretion when it denied the Medlocks' motion for a new trial.

Affirmed.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

The plaintiff (appellant) was clearly free from fault when the defendant (appellee) drove off of the edge of this well graded, easily traveled county dirt road, came back onto the road and without admitted effort to stop, collided with plaintiff's stopped vehicle which occupied its proper lane on the edge of the roadway. Comparative negligence was not an issue and the collision resulted not from an act of God, but rather from the driving of the out-of-control defendant. *This accident was man caused.*

After review of this extended record, I acquire no justification in trial evidence for the jury decision to deny the fault of the defendant driver. After concluding the verdict was completely unsupported on the issue of liability for the reasons expressed in my dissents in *DeJulio v. Foster*, 715 P.2d 182 (Wyo.1986) and *Clarke v. Vandermeer*, 740 P.2d 921 (Wyo.1987) as principles recognized by this court in *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978), I would remand for retrial.[1] This conclusion is consistent with a philosophy that to defend adequately the jury system, it requires effective supervision when unjustified results occur. *Freshwater v. Booth*, 160 W.Va. 156, 233 S.E.2d 312 (1977). See the extended defense of the jury system in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 337, 99 S.Ct. 645, 654, 58 L.Ed.2d 552 (1979), Rehnquist, J., dissenting. An excellent analysis and evaluation of the "civil-jury-trial right" which considers the

---

1. After a reasonable review of the record and careful examination of the exhibits, I do not question in any regard the comment made by the majority in assessing plaintiff's impeachment on the issues of extent of impact, damage, and actual injury. None of that impeachment changes the liability facts of clear fault except as to that jury where justice may be reached only through a curious cognitive filter. *See* Moore, *Trial by Schema: Cognitive Filters in the Court-* room, 37 U.C.L.A.L.Rev. 273 (1987). That author suggests his testing in mock civil trials shows "[t]he most consistent and surprising result is that the students seem to ignore much of the evidence in the case when reaching their verdicts." *Id.* at 273. In analysis, he explains the processes in thinking which determine opinions and conclusions which are not necessarily related to the "real facts."

"dynamics" and "justification for power allocation within that system" is provided by Stephens, *Controlling the Civil Jury: Towards a Functional Model of Justification,* 76 Ky.L.J. 81, 83 (1987–88).

Here, liability for fault should have existed regardless of the obvious decision of this jury to provide no recovery to this injured driver—stopped and properly parked. I would reverse the decision of the district court to deny a new trial because the cognitive filters applied by the jury did not provide justice. *Wells v. McKenzie,* 50 Wyo. 412, 62 P.2d 305 (1936); *State Board of Law Examiners v. Phelan,* 43 Wyo. 481, 5 P.2d 263 (1931); *Kester v. Wagner,* 22 Wyo. 512, 145 P. 748 (1914); *Sloan v. Kramer–Orloff Co.,* 371 Mich. 403, 124 N.W.2d 255 (1963); *Jaeger v. Mitchell,* 277 Mich. 464, 269 N.W. 235 (1936). *See Dubuc v. Ally,* 448 N.W.2d 347 (Mich.1989). *See also Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477 (Tex.App.1989) (challenged legal and factual sufficiency of the evidence which required appellate court reversal of a very large and multi-faceted jury verdict).