ROBERT D. BEACH, Appellee, v. J. B. YOUNGBLOOD et al., Appellants.

No. 41636.

MARCH 14, 1933.

Breese & Cornwall and Marty & Butler, for appellants.

Jay W. Lorenz, for appellee.

ANDERSON, J.—Plaintiff brought this action in equity in the district court in Cerro Gordo county, asking for judgment upon a promissory note executed by the defendants, Youngbloods, on November 15, 1921, at Mason City, Iowa, and made payable there, and secured by a mortgage upon real estate situated wholly within the state of Minnesota. The plaintiff sought judgment upon said note against the makers and also against the defendant John F. Holden, who had assumed and agreed to pay said promissory note by the execution of an extension agreement under date of June 10, 1927. The plaintiff's petition was in the main in the usual form of a peti-

tion to foreclose a real estate mortgage in the state of Iowa. However, in the prayer the plaintiff asked:

"That the said first mortgage deed and rights and claims of the plaintiff be established and decreed by this court to be senior and superior to the interests, rights or equities of the said defendants in the said premises; that the defendant, John F. Holden, shall be declared and decreed by this court to own, hold and convey the said real estate in trust and as trustee for the use and benefit of this plaintiff;"

"That a special execution shall be issued by decree of this court to the sheriff of Cerro Gordo County, Iowa, commanding him to advertise and offer said lands for sale in the manner provided for foreclosure of real estate mortgages in Iowa, the said decree further ordering and requiring the said trustee to convey the said real estate above described to the highest bidder at said sale, subject to such redemption rights as the court may decree and determine;"

"Provided, however, that plaintiff may by decree of this court be permitted to satisfy or attempt to satisfy the judgment herein on general execution against the defendants before resorting to the sale and conveyance of said foreign real estate, and that his mortgage lien thereon may be decreed to be subsisting and not extinguished unless or until the said judgment with interest and costs is wholly satisfied."

And plaintiff prays for other and further equitable relief.

In an amendment to his petition, and as reply to answers of defendants, "plaintiff admits that he seeks personal judgment against this and other defendants and seeks to hold real estate (situated in said other state) as security for his said judgment and to, at the same time, enforce said judgment by general execution against this and other defendants unless and until said judgment is satisfied."

The second paragraph of the prayer above quoted in which plaintiff asks that a special execution issue, etc., was stricken out by the court on motion of the defendants. Motions were filed by the defendants attacking said petition and moving to strike therefrom all reference to the mortgage upon the land situated in the state of Minnesota, which motions were overruled except as to the part of the prayer of the petition which we have just mentioned as having been stricken.

The defendants filed motion to dismiss plaintiff's petition based

upon the grounds that the action was an attempt to foreclose a mortgage upon Minnesota land, and that the court had no jurisdiction of the subject-matter of the action, and that plaintiff is asking for relief which equity cannot grant. This motion was also overruled by the court.

Later, and on August 29, 1931, the defendant Holden filed his separate answer to the petition of the plaintiff admitting that the real estate had been conveyed to him, and that he held the title thereto; admitting the execution and delivery of the note in suit as well as the execution and delivery and recording of the mortgage upon the real estate situated in Minnesota. He also admits the execution of the extension agreement under which he became liable for the payment of the principal note, and states that the court is without jurisdiction to grant the relief prayed for by plaintiff, because the land, which is the subject of the action, is situated wholly within the state of Minnesota, and asks that plaintiff's petition may be dismissed.

Later, and on the 4th day of September, 1931, the defendant J. B. Youngblood filed answer to the plaintiff's petition admitting the execution and delivery of the note and mortgage, and the recording of the said mortgage, and alleging that the court has no jurisdiction to foreclose the mortgage on real estate located wholly without the jurisdiction, and asks that plaintiff's petition be dismissed. The answer of this defendant also contains a cross-petition stating a cause of action against his codefendant John F. Holden by reason of the assumption of the mortgage and its indebtedness by the said John F. Holden, and alleging that he is primarily liable for the payment of the amount of the mortgage, and that, if judgment shall be rendered against this answering defendant, this defendant shall be entitled to relief over against the defendant John F. Holden, and asks that he may have judgment against his codefendant Holden for any amount that he may be required to pay in the satisfaction of the judgment rendered against him in this action.

Separate answer was also filed by the defendant Madeline Youngblood.

The defendant John F. Holden later filed an amendment to his answer designated as Division 3, in which he alleges that by an oral agreement between himself and Mabel A. Beach Nielson, a former owner and holder of the note and mortgage in controversy, the said Mrs. Nielson agreed to accept a conveyance of the Minnesota real

estate in full satisfaction of the amount due upon the mortgage indebtedness, and that the defendant Holden prepared and tendered to the said Mrs. Nielson a quitclaim deed to the Minnesota premises in performance on his part of the alleged oral agreement of settlement; that the said Mrs. Nielson refused to accept the said deed and repudiated her agreement of settlement. And the defendants ask that plaintiff's petition be dismissed, and that plaintiff be ordered by the court to deliver to the defendant all evidences of indebtedness sued on in this action.

A reply was filed to this new addition to the pleadings of the defendant Holden, and motion to strike this and other amendments filed later were submitted to the court and ruled upon in the final finding and decree of the court. Exceptions were taken to some of these rulings, but, as we do not deem them material to the questions here to be determined, we will not extend this opinion by reciting in detail the various motions and rulings thereon.

The material facts involved are not in serious dispute, except as to the issue of settlement raised by one of defendant Holden's amendments to his answer. There is no controversy over the fact as to the execution and delivery of the note and mortgage involved and the amount due thereon.

The court, by its finding and decree, entered judgment against the defendants for the amount due upon the promissory note in suit, and decreed that:

"The mortgage deed as set forth in the plaintiff's petition be and is declared a lien in his favor for and as security for the payment of this judgment from the 15th day of November, 1921, upon the real premises described therein, viz.: (description of property in Wilkins County, Minn.), senior and superior to all rights, interest or equity of said defendants or either of them in and to said premises * * *; that defendant John F. Holden is declared to own, hold, and convey said real estate in trust, subject to the rights and lien of plaintiff under said mortgage, and that he or said defendant, Youngblood, are required to pay and satisfy said judgment within ten days from the filing of this decree, upon failure to do which a special execution or order of this court shall issue upon this judgment, commanding the sheriff of this county to advertise and sell said real estate at public auction in the same manner and according to the provisions of the Iowa statute in cases of foreclosure of

mortgages upon real estate located in Cerro Gordo County, Iowa, and at which sale the plaintiff may be a bidder; that a certificate of sale may issue herein for the sale of said land to the highest bidder at said sale, and the said John F. Holden as trustee is ordered to transfer and convey to said bidder all his right, title and interest in said real estate, subject only to the right of redemption as provided by the statutes of Iowa, which right of redemption is hereby preserved to him for the time as provided by said statutes of Iowa; that all his right, title and interest and that of all the defendants in and to said real estate except said Standring, are hereby forever barred and foreclosed subject only to said right of redemption, and in case said real premises are not so redeemed, the purchaser at said sale shall be entitled to the same, and to the possession of said premises as a fee simple owner thereof, and the said defendants and each of them and all persons claiming by, through or under them, are ordered and commanded, at the end of said period of redemption and failure to comply with the terms thereof, to deliver the possession of said premises to the plaintiff, his heirs, or assigns, and the said John F. Holden is commanded at such time to execute and deliver a deed conveying all right, title and interest in said premises to the purchaser at said sheriff's sale, and if this decree shall not be sufficient under the statutes of Minnesota to afford a full remedy thereunder to carry out and perfect the plaintiff's rights and title to said property, the plaintiff may take such steps as may be required under said statutes to do so."

The decree further provides that, in case the property does not sell under the special execution for sufficient amount to satisfy the judgment and costs, plaintiff shall be entitled to a general execution.

From the proceedings detailed and the decree quoted the defendants appealed, and assign as errors relied upon for reversal that the court erred in overruling defendant's motion to strike from plaintiff's petition the allegations seeking to foreclose the mortgage on the Minnesota land, because the Iowa court did not have jurisdiction to foreclose such mortgage and was without jurisdiction in the action; that the court erred in striking from defendant Holden's amendment to answer the defense of the agreed settlement, and that the court erred in finding for the plaintiff on the question of whether or not such settlement had been made between the parties; and that the court erred in entering the decree foreclosing the mort-

gage against the real estate situated wholly in the state of Minnesota, and ordering the defendant Holden to transfer the title to the purchaser under execution sale.

It will be noticed that no motion was filed at any time by any of the defendants to transfer the action to the law side of the calendar, and in failing so to do, and in filing answers to the plaintiff's petition, and submitting the issues to the court sitting in equity, they waived the error, if there was one, in docketing the case upon the equity side of the calendar, and submitted to the jurisdiction of the equity branch of the court. Pertinent to this question are the following sections of the 1931 Code:

"Section 10944. Error—effect of. An error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings, and a transfer to the proper docket."

"Section 10946. Correction on motion. The defendant may have the correction made by motion at or before the filing of his answer, where it appears by the provisions of this code wrong proceedings have been adopted."

"Section 10949. Errors waived. An error as to the kind of proceedings adopted in the action is waived by a failure to move for its correction at the time and in the manner prescribed in this chapter; * * *"

See, also, Fisher v. Trumbauer, 160 Iowa 255, 138 N. W. 528, 141 N. W. 419; Cress v. Ivens, 155 Iowa 17, 134 N. W. 869; In re Estate of Heaver, 168 Iowa 563, 150 N. W. 698; Johnson v. Home Mutual Insurance Association, 191 Iowa 535, 181 N. W. 244; Penn Mutual Insurance Company v. Doyen, 211 Iowa 426, 233 N. W. 790.

The next question to which we will now refer is that raised by the defendants' claim that an oral agreement was entered into between the defendant Holden and Mrs. Nielson, by the terms of which Mrs. Nielson agreed to accept a conveyance of the Minnesota land in satisfaction of the mortgage on the Minnesota land and the indebtedness secured thereby, and the defendant Holden strenuously insists that such an agreement was made, and that he carried out his part thereof by executing and tendering to Mrs. Nielson a quitclaim deed conveying to her the Minnesota land. He admits, however, that she refused to accept the deed. The agreement was denied by Mrs. Nielson, and we do not think the record sufficient to sustain defend-

ant's contention that there was such an agreement, if such an agreement was not within the statute of frauds, which question we find it unnecessary to pass upon.

We now come to the new and novel question, which is without precedent in this state, as to the plaintiff's right to maintain an action in the courts of Iowa to foreclose a mortgage upon real estate situated wholly without the state of Iowa. Counsel on both sides have cited many authorities claimed by them to support their contention on this question. In some of the early cases, both in England and in this country, the right here claimed by the plaintiff has been sustained, but in all of such cases a necessity existed for the exercise of such right. We will refer to some of the cases in which the question has been involved.

In Widmann v. Hammack, 110 Wash. 77, 187 P. 1091, 1092, 42 A. L. R. 468, there was an indebtedness secured by mortgage on land in the states of Washington and California. In a suit to foreclose in California, the debt was established and foreclosure decreed as to the California land. Later the Supreme Court of Washington held that such action did not preclude another foreclosure of the same mortgage on the land in Washington. And the court also held that the mortgagee did not have the right to include in the foreclosure suit in California the land situated in Washington for the very plain reason, as stated by the court, that "the court in California had no jurisdiction to foreclose a lien upon real property" in the state of Washington.

In Muller v. Dows, 94 U. S. 444, 449, 24 L. Ed. 207, which was a case appealed from the Circuit Court of the United States for the District of Iowa, and involved the foreclosure by a trustee of a trust deed executed by the Chicago & Southwestern Railway Company securing certain bonded indebtedness, and covering property both real and personal, situated both in the states of Iowa and Missouri. The court entered a decree of foreclosure as prayed and ordered the sale of the property situated in both states. The objection urged against such decree was that it was void so far as it directed the usual foreclosure and sale of property not within the territorial jurisdiction of the court in Iowa. The Supreme Court sustained the decree entered in the lower court, saying:

"If such a foreclosure and sale cannot be made of a railroad which crosses a State line and is within two States, when the entire

line is subject to one mortgage, it is certainly to be regretted, and to hold that it cannot be would be disastrous, not only to the companies that own the road, but to the holders of bonds secured by the mortgage. Multitudes of bridges span navigable streams in the United States, streams that are boundaries of two States. These bridges are often mortgaged. Can it be that they cannot be sold as entireties by the decree of a court which has jurisdiction of the mortgagors?"

And the court held that, if the railroad or bridges could not be sold in entirety under the legal process and only in fragments in each state, the company owners and the holders of the securities would be irreparably damaged. The court further say:

"It is here undoubtedly a recognized doctrine that a court of equity, sitting in a State, and having jurisdiction of the person, may decree a conveyance by him of land in another State, and may enforce the decree by process against the defendant. True, it cannot send its process into that other State, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title."

In analyzing the last cited case it must be borne in mind that a real estate mortgage cannot be enforced by a strict foreclosure in Iowa, but only by judgment of foreclosure and sale under the statute. The many cases holding that land contracts or trusts relating to property in a foreign state may be enforced in a personal action against the contractor or trustee by judgment requiring him to specifically perform have no application to the case we are considering, nor do the cases where action is brought to foreclose upon an indivisible property, like a railroad extending into another state or jurisdiction, apply. In such cases jurisdiction of one portion of an indivisible *res* is obtained, and foreclosure and sale of the whole property by the court so obtaining jurisdiction is deemed a necessity. No such situation exists in the case at bar.

In Richard v. Boyd, 124 Mich. 396, 83 N. W. 106, a suit in which an attempt was made to foreclose in the state of Michigan against real estate situated in the state of New York. The court had jurisdiction in *personam*, but the court held that the suit was one in *rem*, and local, and could not be maintained.

Eaton v. McCall, 86 Me. 346, 29 A. 1103, 41 Am. St. Rep. 561, was an action in equity to foreclose a mortgage upon real estate

situated in Nova Scotia, brought in the courts of Maine, in which the jurisdiction of a court of equity was in question, and the court in ruling upon that question say:

"It is a familiar maxim of equity *jurisprudence* that equity acts against the person. Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affects and operates upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts towards it, and it is thus ultimately, but indirectly, affected by the relief granted."

"Common instances of such an exercise of equity powers/are where courts having jurisdiction of the person decree the specific performance of contracts to convey lands, enforce and regulate trusts, or relieve from fraud, actual or constructive, although the subject-matter of the contract, trust, or fraud, either real or personal property, be situated in another State or country." (Citing the leading case of Penn v. Lord Baltimore, 1 Ves. Sr. 444.)

The last cited case reviews many other cases, including Muller v. Dows, supra, and holds that under certain circumstances a court of equity may decree a foreclosure of a mortgage on land situated without the jurisdiction of the court, but goes on to say:

"but as to when and under what circumstances this power should be exercised by the court is, we think, another and quite different question. It must be remembered that no decree of the court would be operative except one against the mortgagor, or person having the right to redeem, commanding a conveyance. The court could not proceed in the usual and customary method by decreeing either a strict foreclosure or a foreclosure by judicial sale. Neither the decree itself, nor any conveyance under it, except by the person in whom the title is vested, can operate beyond the jurisdiction of the court. A court can not send its process into another State, nor can it deliver possession of land in another jurisdiction. * * *

"We do not think that a chancery court should exercise this power except under unusual or extraordinary circumstances. Wherever it is necessary in order to prevent loss or protect the rights of a mortgagee it may be done; for instance in the case of a mortgage upon property situated both within and without the State, where,

unless sale of the entire property could be made at one time, great loss may ensue, or in other cases where an equally good reason existed."

It is a well and universally established principle that the disposition of real estate, either by deed, descent, or any other method, must be governed by the law of the state where the same is situated.

Our statute provides (section 12374, 1931 Code) that an action to foreclose a mortgage on real property shall be brought in the county in which the property or some part thereof is situated, and we must assume that the law of the state of Minnesota contains like provisions. And it follows that a decree of court in this state cannot affect the title to real estate in another state, or in Minnesota. Of course, this probably would not be true if the action here was upon a contract in which fraud was the gravamen of the action, or in which some other unusual or necessary situation entered, such as have been referred to in the prior cited cases.

In this case there are no reasons, either alleged or apparent, why the plaintiff could not foreclose his mortgage under the law of the state of Minnesota where the land is situated without any loss or great inconvenience.

The case of Hammond v. Wall, 51 Utah 464, 171 P. 148, 151, involved facts almost identical with the facts involved in the instant case, and the decree entered in that case was almost identical with the decree here involved. The opinion contains a review of most of the cases we have cited. The court cites Rorer on Judicial Sales, section 58, as follows:

"Lands lying in one state cannot be reached or sold under order, license, or decree of a court entered in a different state. The jurisdiction is local. The *lex loci rei sitae* governs."

The court holds in the last cited case that the court of Utah was powerless to foreclose the mortgage on lands lying in the state of Idaho, and to order the sheriff of the county in Utah in which part of the land was situated to sell the lands in the state of Idaho in satisfaction of the mortgage. And the court say:

"The record therefore presents a case where a court of equity had jurisdiction of the subject-matter and also of the person of the petitioner, but where the court exceeded its jurisdiction in requiring a party to the action to do something [execute a conveyance] the court

could not require of him. If it shall be held that the district court had the power to make the order of sale and to require the petitioner to execute a quitclaim deed to the purchaser because the petitioner had succeeded to the title of the mortgagors of the mortgaged premises subject to the mortgage after the mortgage was executed, then it follows that the court has the power in any foreclosure suit to compel the holder of the legal title, that is, of the equity of redemption, to convey the same to the purchaser of the mortgaged premises after sale. Indeed, why may not a court, however erroneous such an order may be, order the holder of the legal title to convey the same to the mortgagee before sale? That is in effect what the court did in this case, since the order of sale was stillborn and of no effect. What is true of the order of sale is likewise true of the sale itself."

In this state a foreclosure proceeding is an exclusively statutory remedy, and the statute authorizing the same must be strictly followed. Our statute provides the only method of subjecting mortgaged property to the payment of the debt which it secures. What is known as a strict foreclosure has been abrogated in this state. Gamut v. Gregg, 37 Iowa 573; Silver v. Wickfield Farms, 209 Iowa 856, 227 N. W. 97.

We hold that, under the circumstances in this case, the plaintiff could not foreclose in the courts of this state against lands in the state of Minnesota, and that, in entering its decree directing foreclosure, the court transcended its powers, and all that was done in that regard was void; and the order of the district court directing the sheriff of Cerro Gordo county to sell the Minnesota lands was utterly void. The court could only determine the amount due the plaintiff from the defendants, fix and determine the rights and priorities of the parties in regard to the mortgage on the Minnesota lands, establish the lien thereof as between the parties, and preserve the same as between the parties over which it had personal jurisdiction.

The decree entered by the trial court was broader than the prayer of the petition. The court on motion struck from the prayer of the petition the objectionable part thereof, praying for the issuance of a special execution and the sale by the sheriff of Cerro Gordo county of the Minnesota land, but incorporated in its decree the substance of the part so stricken, and ordered the issuance of a special execution and directed the sale of the Minnesota land there-

under. That was erroneous and without its jurisdiction. As we have indicated, no motion to transfer to the law docket was made by the defendants. They answered to the petition of the plaintiff and prayed for relief, and relief was granted on a cross-petition to the defendants Youngblood. The finding determining the amount due the plaintiff from the defendants and entering judgment therefor was within the jurisdiction of the court and may stand. The decree, in so far as it attempts to foreclose the mortgage upon the Minnesota land and order and direct its sale by the sheriff of Cerro Gordo county, is without the jurisdiction of the court, and of no force or validity. The decree should be supplemented or amended, providing for the issuance of a general execution upon the judgment and preserving the plaintiff's right to foreclose in the courts of the state of Minnesota. The decree and judgment of the lower court is accordingly modified, affirmed, and remanded.—Modified, affirmed, and remanded.

All Justices concur.