[Civ. No. 9686. Second Appellate District, Division Two.—June 8, 1934.]

E. G. DODGE, as Special Administrator, etc., Petitioner, v. THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES, Respondent.

McAdoo & Neblett, Wm. H. Neblett and Judd D. Kimball for Petitioner.

Everett W. Mattoon, County Counsel, J. F. Moroney, Deputy County Counsel, S. S. Hahn, W. O. Graf and Phi O. Clough for Respondent.

ARCHBALD, J., *pro tem.*—Proceedings brought to compel the superior court to proceed with the trial of a case after making the following order in response to a motion to abate: "That the above action abate pending the final determination of said action No. 259–996 in the Superior Court of the State of Washington for King County, and in the event said action is finally terminated and adjudicated in favor of the defendants in said action, the defendants in this action be allowed to amend their answer to plead such judgment in bar of this action." It is urged that the pleadings and files of said superior court action show that the court exceeded its jurisdiction in making such order and that it was made entirely without authority.

Briefly stated, the pleadings in this case set out the pleadings in a prior action in the Superior Court of King County, Washington, which the parties admitted were true and correct copies in the opening arguments which preceded the urging of the defense set up in the answer of a prior action pending in the courts of such state between the same parties for the same cause. It appears from said pleadings that B. H. Canfield, a short time prior to his death, together with defendants E. W. Scripps, Josephine S. Scripps and James G. Scripps, were the owners of the capital stock of

various publishing companies, also named as defendants in both the California and Washington cases, Canfield owning approximately thirty per cent of such stock and the other individual defendants approximately seventy per cent. It also appears that E. W. Scripps, senior, started such business, and together with Canfield built the same into a very large and lucrative one. The senior Scripps had a son, James G. Scripps, who was the husband of defendant Josephine S. Scripps and the father of defendants E. W. and James G. Scripps. After the death of the elder E. W. Scripps the management of the business continued in the hands of Canfield until shortly before his death, when he was succeeded by defendant E. W. Scripps. It appears that large sums of money had been loaned to Canfield by Josephine S. Scripps and E. W. Scripps, trustee, and that the stock of said Canfield had been pledged with defendant E. W. Scripps to secure said loans under certain trust agreements; that after Canfield's death, such indebtedness being in default, proceedings were commenced by said trustee to sell the Canfield stock to satisfy the same. The Washington case was instituted by plaintiff as special administrator with general powers of decedent Canfield's estate, with whom were joined as plaintiffs the legatees and devisees under the last will and testament of Canfield, for the purpose of preventing such sale on various grounds of invalidity of any attempted sale, including charges of fraud. The trial of such case consumed about four weeks and resulted in a judgment for the defendants dismissing the action, from which judgment an appeal is now pending in the Supreme Court of Washington. After such judgment defendants proceeded with said sale and bought in the Canfield notes.

The case involved here was brought by plaintiff to recover from defendants the sum of $1,100,000 damages caused by defendants "on May 26, 1933, at Seattle, Washington" (admittedly the date of the sale of the Canfield stock under the trust agreements), by the unlawful conversion and disposition of said stocks by said defendants, who were then in possession of the same.

That the validity of said sale is the issue in both cases would seem to be unquestioned; that such issue will be determined by the decision in the Washington case as between plaintiff and said individual defendants, who would

seem to be the only real parties defendant in interest, is beyond controversy. In other words, the conclusion which the trial court reached, that the parties and issues were the same in both cases, finds ample support in the evidence before it.

It is undoubtedly the law, as contended by petitioner, that in order for one action to abate another it must not only be pending at the same time, for the same cause and between the same parties, but it must also be pending in the same jurisdiction. (*Hatch* v. *Spofford,* 22 Conn. 485 [58 Am. Dec. 433].) The true reason for such rule, as shown in the cited case is that "every country or state is entirely sovereign and unrestricted in its powers, whether legislative, judicial or executive, and hence does not acknowledge the right of any other nation to hinder its own acts and proceedings . . . ; and therefore the courts of a country where a second suit is brought will not dismiss a suitor merely because initiatory steps have been taken elsewhere".

Such court, even as early as 1853, then said: "It may be cause for staying proceedings, but to abate a suit is to put a final end to its existence." That such is the meaning of "abate" seems clear. Webster defines the word: "To put an end to; to do away with." Turning to the order made here, we find that it was not, strictly speaking, an order abating the action, but rather staying it until the determination of the pending litigation in Washington, at which time, if such determination is in favor of defendants, it may be pleaded as a bar in their answer to the California complaint.

While it is unquestionably the law that the pendency of a prior action in another state between the same parties, involving the same cause of action, does not entitle a party as a matter of right to an abatement of a second suit, we think it is equally true that it is within the discretion of the court in which the second action is pending to stay the same until after the decision of the first (*Beneke* v. *Tucker,* 90 Or. 230 [176 Pac. 183]), and that the principle of comity between the states calls for the refusal on the part of the courts of this state to proceed to a decision before the termination of the prior action (*Sulz* v. *Mutual Reserve Fund Assn.,* 145 N. Y. 563 [40 N. E. 242, 28 L. R. A.

379]); and in our opinion the fact that the first case, as here, after a long trial has resulted in a decision on the merits which is before the Supreme Court of the state on appeal, would make a refusal to so stay the second action almost an abuse of discretion by the trial court.

Under section 1047 of the Code of Civil Procedure successive actions upon the same contract or transaction may be maintained whenever, after the former action, a new cause of action arises therefrom. Such a condition does not prevail here under the second action, which involves the same cause of action, viz., the alleged invalidity of the transactions leading up to the sale of the Canfield stock that is the cause of the first action. A final adjudication of such issue in the first case will be a bar to the same issue in the second, and that is the test for determining whether or not the identity of the matter involved in both actions is the same. (*McCormick* v. *Gross,* 135 Cal. 302, 305 [67 Pac. 766]; *Baker* v. *Eilers Music Co.,* 175 Cal. 652, 655 [166 Pac. 1006].) It is to be noticed that the notice of sale of said stock was dated November 15, 1932, and the date of the sale was to be January 16, 1933. The Washington suit restraining such sale was filed January 13, 1933, and necessarily the sale was postponed, taking place May 26, 1933, after the temporary restraining order was dissolved. If anything occurred after January 13, 1933, affecting the validity of said sale it would in no way be affected by the adjudication in the Washington case, but as to matters urged in said Washington suit as affecting the validity of said sale it would, in our opinion, be a bar; and while under plaintiff's complaint herein such subsequent issues, if any, would not be barred, nor would any real issue between petitioner and Scripps Newspapers, Inc., not necessarily be involved in the Washington case, still in our opinion it was well within the discretion of the trial court to stay the trial until such case is finally determined.

In our opinion the trial court did not exceed its jurisdiction in making the order of which complaint is made.

The rule of the order to show cause is discharged and the petition dismissed.

Craig, Acting P. J., and Desmond, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 6, 1934, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 6, 1934.