RIVERMEADOWS, INC., a corporation,
and Donald H. Albrecht, Appellants
(Defendants),

Security Pacific National Bank, a
National Banking Association,
(Defendant),

v.

ZWAANSHOEK HOLDING AND FIN-
ANCIERING, B.V., a Netherlands
corporation, Appellee (Plaintiff),

Meadowrivers Corp., a Wyoming
corporation, Appellee
(Defendant).

No. 86–278.

Supreme Court of Wyoming.

Sept. 20, 1988.*
Rehearing Denied Oct. 24, 1988.

* Case assigned October 1, 1987; opinion circulat- ed for comment November 2, 1987.

Frank Hess of Dill & Hess, Jackson, and Richard H. Floum and Greg David Derin of Derin, Mason & Floum, Los Angeles, Cal., for appellants.

Charles G. Kepler of Simpson & Kepler, Cody, Leo P. Larkin, Jr. of Rogers & Wells, New York City, and John A. Karaczynski of Rogers & Wells, Los Angeles, Cal., for appellee Zwaanshoek Holding and Financiering, B.V.

Ross D. Copenhaver of Copenhaver, Copenhaver & Kath, Powell, for appellee Meadowrivers Corp.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and O'BRIEN, District Judge.

MACY, Justice.

In this action, plaintiff-appellee Zwaanshoek Holding and Financiering, B.V. (Zwaanshoek) commenced a civil action against defendants-appellants Donald H. Albrecht (Albrecht) and Rivermeadows, Inc. (Rivermeadows), defendant-appellee Meadowrivers Corp. (Meadowrivers), and defendant Security Pacific National Bank (Bank) seeking judgment on a defaulted $1 million promissory note and foreclosure and sale of the property securing the payment of the promissory note. Albrecht and Rivermeadows answered the Zwaanshoek complaint, asserting numerous affirmative defenses and counterclaims as well as cross-claims against Meadowrivers. After the jury returned a special verdict, the court entered judgment in favor of Zwaanshoek and Meadowrivers.

We affirm.

Albrecht and Rivermeadows present the following issues on appeal:

A. Did the District Court commit reversible error in granting Zwaanshoek judgment notwithstanding the verdict (hereafter "nov"), vacating the special verdict (Issue No. 3) in which the jury found by a preponderance of the evidence that "there is such a unity of interest and ownership between defendant Meadowrivers Corp. and plaintiff Zwaanshoek that they should be treated as a single entity," on the presumed grounds that there purportedly was no substantial evidence in the trial record to support that special verdict?

B. Did the District Court abuse its discretion and commit reversible error in denying defendants' motion to stay this action in light of the pre-existing California action?

C. Did the District Court abuse its discretion and commit reversible error in denying defendants' motion to join MIG and MIG–U.S.A. as parties to this action?

D. Did the District Court commit prejudicial error in denying appellants' motion to realign parties so that they would have the same number of peremptory challenges as putative defendant Meadowrivers and plaintiff Zwaanshoek?

E. Did the District Court commit reversible error in failing to grant appellants' motion for judgment nov and for new trial based upon (1) the inconsistency of the jury's verdicts, (2) defendants' rights of offset (including utilization of accrued and payable interest and lot installment payments due to Albrecht under his $2.5 million promissory note, and reimbursement for expenses and compensation due Rivermeadows under the Development Agreement), and (3) prejudicial errors regarding jury instructions and various pre-trial rulings?

F. Did the District Court commit prejudicial error in refusing to give appellants' proposed jury Instructions Nos. 5A (dealing in part with their offset claims), 9A (dealing with Rivermeadows' claimed breach by Zwaanshoek of its loan agreement), and 22 (dealing with Meadowrivers' obligations to pay development

costs outside the Development Agreement)?

G. Did the District Court commit prejudicial error in refusing to admit Exhibits A–38 and A–93 proffered by defendants?

H. Did the District Court commit prejudicial error in refusing to allow defendants to conform their pleadings to the proof regarding their entitlement to compensation for development services, including repairs to the water system, on a quantum meruit theory?

(Footnotes and record references omitted.)

Early in 1981, Albrecht sold unimproved real property to Meadowrivers, a Wyoming corporation, and Albrecht's Wyoming corporation, Rivermeadows, entered into an agreement with Meadowrivers to develop that property. On February 19, 1981, Rivermeadows borrowed approximately $828,000 from Zwaanshoek in exchange for a $1 million promissory note and Meadowrivers' agreement to mortgage its unimproved property to secure the payment of the promissory note. Albrecht then unconditionally guaranteed the payment of Rivermeadows' $1 million promissory note to Zwaanshoek.

Meadowrivers also executed and delivered to Albrecht a promissory note in the amount of $2.5 million. To secure the promissory note, Meadowrivers mortgaged the same unimproved real property which was subject to the $1 million promissory note. In turn, Albrecht delivered a subordination agreement to Zwaanshoek, subordinating the $2.5 million promissory note and mortgage to the $1 million promissory note. Albrecht also sent a letter to Zwaanshoek stating that, in the event of default by Meadowrivers on its $2.5 million promissory note and mortgage, he would look solely to the mortgaged property and would not hold Meadowrivers liable. Albrecht then assigned the $2.5 million promissory note and mortgage to the Bank for security purposes.

Both Rivermeadows and Albrecht defaulted on the $1 million promissory note with Zwaanshoek, and Zwaanshoek filed suit against them and Meadowrivers claiming breach of the promissory note and seeking to foreclose on the Meadowrivers' property used as collateral. In their answer, Albrecht and Rivermeadows asserted affirmative defenses and counterclaims against Zwaanshoek and cross-claims against Meadowrivers, contending fraudulent misrepresentation, breach of contract, quantum meruit, acceleration of promissory note, foreclosure of mortgage, maintenance of action without a certificate of authority, lack of accounting, merger of mortgage, failure of consideration, violation of the "Alien Land Act," and unenforceable guaranty and asserting that the damages resulting from their counterclaims should be offset against the damages found pursuant to the claims made by Zwaanshoek.

On April 1, 1985, Albrecht and Rivermeadows filed a motion to stay the case until an earlier California action was concluded among Rivermeadows, Albrecht, Arab Investors Group, S.A. a.k.a. Mediterranee Investors Group, S.A. (AIG (MIG)), Mediterranee Investors Group–U.S.A., Inc. (MIG–U.S.A.), Zwaanshoek, Meadowrivers, and others alleging fraud, rescission, and breach of contract relating to a complex series of transactions among the parties, including the $1 million promissory note involved in this action. The motion was denied by the trial court in a summary order without a hearing or the filing of briefs in opposition.

Albrecht and Rivermeadows also filed a motion with supporting brief to join AIG (MIG) and MIG–U.S.A., alleging that these entities along with Zwaanshoek and Meadowrivers were each the alter ego of the other and hence necessary parties in the action. Without holding a hearing but after allowing Zwaanshoek to file a brief in opposition, the trial court denied the motion. The trial court further denied Rivermeadows' and Albrecht's motion for reconsideration on the matter without a hearing.

At a prehearing conference, the trial court assigned three peremptory challenges each to Zwaanshoek, Meadowrivers, and the Bank, and it assigned three peremptory challenges combined to Albrecht

and Rivermeadows. In light of the trial court's actions, Albrecht and Rivermeadows filed a motion for realignment of peremptory challenges. After selection of the jury had been completed, the motion for realignment of peremptory challenges was denied. Additional argument ensued upon the matter, and the trial court reaffirmed its prior ruling.

At the conclusion of the trial which began on July 7, 1986, the jury returned a special verdict. Albrecht and Rivermeadows brought a motion for a judgment notwithstanding the verdict and a new trial, and Zwaanshoek brought its own countermotion for a judgment notwithstanding the verdict. In response to these motions, the trial court entered a nunc pro tunc judgment in favor of Zwaanshoek and Meadowrivers. In that judgment the trial court ruled, contrary to the jury's finding of a unity of interest in ownership, that Zwaanshoek and Meadowrivers were to be treated as separate entities apart from one another for the purposes of the transaction which was the subject of the suit on the basis of the intent of the parties as clearly shown by the evidence. Albrecht and Rivermeadows noticed this appeal.

## I

In Albrecht's and Rivermeadows' first issue, they contend that the trial court improperly overruled the jury's special verdict which found that Zwaanshoek and Meadowrivers were one entity. They argue that the judgment rendered by the trial court through the jury's interpretation by special verdict is inconsistent with the evidence presented at trial showing that Zwaanshoek and Meadowrivers were involved in an alter ego relationship. They claim the trial court improperly placed itself in a role of trier-of-fact which was in excess of the trial court's jurisdiction.

The standards we employ when reviewing the sufficiency of evidence to support a jury verdict are well stated in *Crown Cork & Seal Company, Inc. v. Admiral Beverage Corporation*, Wyo., 638 P.2d 1272, 1274–1275 (1982):

"[W]e assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably and fairly drawn from it. In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflicts therein and drawing its own inferences if more than one inference is permissible. Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive." (Citations omitted.)

*Reese v. Dow Chemical Company*, 728 P.2d 1118, 1120 (Wyo.1986). Further, we note:

"The general rule regarding a court's role in evaluating the consistency of findings in special verdicts is stated in Wright & Miller, Federal Practice and Procedure: Civil § 2510, pp. 515–517 (1971):

"'It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." (Footnotes omitted.) (Quoting *Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 82 S.Ct. 780, 786, 7 L.Ed. 2d 798 (1962)).

Id. at 1119–20. Applying these rules to the present case, we can reconcile the jury's findings and the trial court's judgment without difficulty.

In its special verdict, the jury made the following applicable findings:

*ISSUE NO. 1.*

State the amount of principal and interest to which Plaintiff Zwaanshoek is entitled as a result of Defendant Rivermeadows' failure to pay the $1 million note.

$489,284.86

*ISSUE NO. 2.*

Is Albrecht excused or otherwise relieved from performance of his guaranty agreement for the $1 million note?

Yes__ No _X_

*ISSUE NO. 3.*

Do you find from a preponderance of the evidence that there is such a unity of interest and ownership between Defendant Meadowrivers Corp. and Plaintiff Zwaanshoek that they should be treated as a single entity?

Yes_X_ No___

*ISSUE NO. 4.*

Is the $2.5 million promissory note from Defendant Meadowrivers Corp. to Defendant Albrecht due and payable?

Yes___ No _X_

\* \* \* \* \* \*

*ISSUE NO. 6.*

Is the non-recourse agreement in Exhibits 18 and 68 binding on Defendant Albrecht?

Yes _X_ No___

*ISSUE NO. 7.*

Is Defendant Rivermeadows entitled to recover from Meadowrivers for a breach by Meadowrivers of the Development Management Agreement?

Yes___ No _X_

\* \* \* \* \* \*

*ISSUE NO. 9.*

Is Plaintiff Zwaanshoek's $1 million mortgage enforc[e]able?

Yes _X_ No___

*ISSUE NO. 10.*

Is the Subordination Agreement, Exhibit 11, binding?

Yes _X_ No___

*ISSUE NO. 11.*

Is Defendant Rivermeadows entitled to recover from Plaintiff Zwaanshoek for a breach by Plaintiff Zwaanshoek of the Loan Agreement?

Yes___ No _X_

\* \* \* \* \* \*

*ISSUE NO. 13.*

Did Meadowrivers have a duty to develop, manage and market the property after December 31, 1982 so as to pay off the obligations to Plaintiff Zwaanshoek and Defendant Albrecht?

Yes___ No _X_

■ Although some of the evidence presented at trial showed that Zwaanshoek and Meadowrivers were involved in an alter ego relationship, the evidence also showed that Albrecht was a businessman, investor, and attorney who had been involved in real estate development projects for over twenty years and that he knew how to structure such transactions so as to obtain optimal financial leverage and favorable tax advantages. It is also apparent from the record that Albrecht guided his own corporation, Rivermeadows, with his expertise in the field with regard to its transactions with Zwaanshoek and Meadowrivers. Both Albrecht and Rivermeadows knew of the relationship between Zwaanshoek and Meadowrivers. They knowingly intended to and did treat Zwaanshoek and Meadowrivers as separate entities, contracting with each of them independently and giving them their own distinct rights, duties, and obligations under each of the contracts involved in the transactions in an attempt to further their own advantages. Also, in no way did Zwaanshoek or Meadowrivers ever defraud Albrecht or Rivermeadows with regard to their corporate makeup.

As stated in *Opal Mercantile v. Tamblyn*, 616 P.2d 776, 778 (Wyo.1980):

Each case involving the disregard of the separate entity doctrine must be governed by the special facts of that case.

In cases such as this where the parties are aware of the corporate status and they knowingly enter into transactions with no fraud being evidenced, there is no rationale or policy which requires that the corporate entity be disregarded. Id.; *Arnold v. Browne*, 27 Cal.App.3d 386, 103 Cal.Rptr. 775 (1972), overruled in part on other grounds by *Reynolds Metals Company v.*

*Alperson,* 25 Cal.3d 124, 158 Cal.Rptr. 1, 599 P.2d 83 (1979). Courts have refused to pierce the corporate veil in cases where "the intent and consequences of [the relevant transactions] were known and understood by all of the parties, who were all represented by legal counsel." *Arnold,* 103 Cal.Rptr. at 782.

We hold that, under the facts and circumstances of this case, the district court did not commit reversible error by vacating Special Verdict No. 3.

## II

■ In Albrecht's and Rivermeadows' second issue, they assert that the trial court abused its discretion and committed reversible error when it denied their motion to stay this action in light of a preexisting action filed in the state of California. Specifically, they contend that, because this case is such a small fragment of an unraveling series of transactions among the parties and the parent companies of Zwaanshoek and Meadowrivers involving *all* the complex disputes currently and comprehensively being litigated in California, the principles of comity and justice dictate that the case should have been stayed until the California case has been concluded.

Albrecht and Rivermeadows direct this Court's attention to the cases of *Dodge v. Superior Court in and for Los Angeles County,* 139 Cal.App. 178, 33 P.2d 695 (1934), and *Simmons v. Superior Court in and for Los Angeles County,* 96 Cal.App. 2d 119, 214 P.2d 844, 19 A.L.R.2d 288 (1950), in support of the rule of law that:

> Abuse of discretion will be found if the trial court denies the stay under circumstances in which an injustice would be perpetrated on the party seeking the stay, and no hardship, prejudice or inconvenience would result to the party against whom it is sought.

However, neither Albrecht nor Rivermeadows has shown this Court that it was prejudiced in any way by the trial court's decision to not stay this case. The trial court permitted the filing of amended pleadings allowing Albrecht and Rivermeadows to eliminate certain matters to be heard before the Wyoming court so as to preserve them for California determination. Albrecht and Rivermeadows were given a full and fair opportunity in Wyoming before a jury to try all their defenses, counterclaims, and cross-claims pertaining to the Wyoming transactions.

The trial court did not abuse its discretion when it denied Albrecht's and Rivermeadows' motion for stay. As stated in *Barringer v. Ray,* 74 Wyo. 317, 287 P.2d 629, 634–35 (1955):

> So we said in *In re Smith's Estate,* 55 Wyo. 181, 200, 97 P.2d 677, 684: "Every state has plenary jurisdiction and control of the property, real and personal, within its borders." To the same effect is *In re Holden's Estate,* 110 Vt. 60, 1 A.2d 721, 119 A.L.R. 487, 489, and cases cited. In 11 Am.Jur. § 30, pp. 328, 329, 330, it is stated:
>
> > "A principle of law which is acquiesced in by the jurists of all civilized nations and thus part of the jus gentium is that all real or immovable property is exclusively subject to the laws of the country within which it is situated, and no interference with it by any other sovereignty can be permitted. Therefore, all matters concerning the title and disposition of real property are determined by what is known as the lex loci rei sitae, which can alone prescribe the mode by which a title to it can pass from one person to another or an interest therein of any sort can be gained or lost. This general principle includes all rules which govern the descent, alienation, and transfer of such property and the validity, effect, and construction of wills and other conveyances."
>
> * * * The cases on the subject are numerous and so nearly unanimous that it would be useless to attempt to discuss them all.

The reasoning used in the case of *Beach v. Youngblood,* 215 Iowa 979, 247 N.W. 545 (1933), is also persuasive. In that case, a note and mortgage had been executed in Iowa but the mortgaged property was located in Minnesota. Upon default in pay-

ment of the note, the holder thereof brought an action in Iowa, seeking to foreclose the mortgage upon the Minnesota land. The trial court entered judgment for the amount of the note, declared the mortgage a lien superior to the claims of all other parties, and directed the county sheriff in Iowa to advertise and sell the Minnesota property in the same manner as sales are made of Iowa property. On appeal it was argued that the Iowa court had no jurisdiction of the foreclosure phase of the action and that consequently the order of foreclosure was a nullity. After discussing the applicable principles at length and referring to numerous cases, all of which deny the power of the courts of one state to decree a foreclosure on property within another state, the court made the following statement:

> It is a well and universally established principle that the disposition of real estate, either by deed, descent, or any other method, must be governed by the law of the state where the same is situated.

Id. 247 N.W. at 549. The trial court did not abuse its discretion when it denied Albrecht's and Rivermeadows' motion to stay.

### III

■ In their third issue, Albrecht and Rivermeadows claim that the numerous transactions among Albrecht, Rivermeadows, Zwaanshoek, and Meadowrivers were all negotiated by Albrecht with the parent companies of Zwaanshoek and Meadowrivers; i.e., AIG (MIG) and MIG–U.S.A. They contend that the trial court abused its discretion and committed reversible error in denying their motion to join AIG (MIG) and MIG–U.S.A. as parties to the action pursuant to W.R.C.P. 13(h).

W.R.C.P. 13(h) states:

> Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20.

W.R.C.P. 19(a) provides:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

This Court has long recognized the traditional definition of an indispensable party with regard to W.R.C.P. 19(a). In *American Beryllium & Oil Corporation v. Chase*, 425 P.2d 66, 68 (Wyo.1967) (quoting from *Amerada Petroleum Corporation v. Rio Oil Co.*, 225 F.Supp. 907, 910 (D.C. Wyo.1964)), quoted in *Reilly v. Reilly*, 671 P.2d 330, 332 (Wyo.1983), we stated:

> "An indispensable party has been defined as one without whose presence before the court a final decree could not be made without either affecting his interest or leaving the controversy in such a condition that its final determination might be wholly inconsistent with equity and good conscience. Whether or not a person is an indispensable party cannot be determined by a prescribed formula because the facts peculiar to each case are determinative of that question."

(Citations omitted.) See also *Johnson v. Aetna Casualty & Surety Co. of Hartford, Conn.*, 608 P.2d 1299 (Wyo.1980).

After a careful review of the record, we determine that AIG (MIG) and MIG–U.S.A. are not indispensable parties to this action. Their participation is not required to resolve the claims and defenses alleged in this case. Zwaanshoek's claims are solely on the bases of Rivermeadows' $1 million promissory note, Albrecht's personal guaranty, and the mortgage given to Zwaanshoek by Meadowrivers. Likewise, the

parties to the agreements underlying Albrecht's and Rivermeadows' counterclaims and cross-claims are named parties in this action. The Bank, which has an interest in the subject property, is also a named party. Neither AIG (MIG) nor AIG–U.S.A. needs to be joined in this action for its proper litigation, and they are not indispensable parties.

W.R.C.P. 20 provides in part:

(a) *Permissive joinder.*—* * * All persons may be joined in one (1) action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. * * *

(b) *Separate trials.*—The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice.

In the case of *England v. Simmons*, 728 P.2d 1137 (Wyo.1986), we extensively discussed the provisions of W.R.C.P. 20 and its application. Therein, we stated:

Rule 20, Federal Rules of Civil Procedure, which is identical to Wyoming's rule, is explained in 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §§ 1653 and 1660. It is stated at § 1653, p. 382:

"Instead of developing one generalized test for ascertaining whether or not a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case by case approach. As stated by one district court judge:

'there can be no hard and fast rule, and that the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require

them to defend jointly [the several claims] against them * * *.' "

And at § 1660, pp. 436–438:

"The general philosophy of the joinder provisions of the federal rules is to allow virtually unlimited joinder at the pleading stage but to give the district court discretion to shape the trial to the necessities of the particular case. * * * "

* * * * * *

This court has defined abuse of discretion numerous times. Recently, we said:

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. * * *' *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

* * * * * *

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985).

* * * * * *

" * * * Each case must be determined on its peculiar facts. * * *" *Martin v. State*, Wyo., 720 P.2d 894, 896–897 (1986).

*England*, 728 P.2d at 1139–40.

In this case, the order denying joinder states no rationale as the basis for denial. Conjecture by this Court as to the specific ground for denial is not required.

"Our consideration is limited to a determination of whether the trial court was clearly wrong in denying this motion." Id. at 1140 (quoting from *Martellaro v. Sailors*, 515 P.2d 974, 976 (Wyo.1973)). W.R.C.P. 20 is entitled "*Permissive joinder* of parties." (Emphasis added.)

Under our statutes relating to joinder, the trial court is entitled to exercise con-

siderable discretion in determining who should be joined or retained. *England*, 728 P.2d at 1140. Applying the current definition of abuse of discretion and its standard of review, we must give due deference to the trial court and its denial of joinder of the parties. Any one of the reasons given under W.R.C.P. 20 may have been plausible reason for denial of joinder. We fail to see how or why Albrecht and Rivermeadows were prejudiced by the trial court's actions with regard to their motion for joinder.

### IV

■ The trial court treated Zwaanshoek, Meadowrivers, and the Bank as separate sides, granting them each three peremptory challenges, while it treated Albrecht and Rivermeadows as one side, giving them collectively three peremptory challenges. As a result, Albrecht and Rivermeadows claim that the trial court committed prejudicial error and deprived them of their constitutional right to a fair and impartial jury when the court denied their motion to realign the parties so that they would receive the same number of peremptory challenges as Meadowrivers, Zwaanshoek, and the Bank received.

W.S. 1–11–202 provides:

In the trial of civil cases in the district courts of this state, each side is allowed three (3) peremptory challenges.

In the case of *Distad v. Cubin*, 633 P.2d 167 (Wyo.1981), we held that, in determining whether multiple defendants constitute one side, consideration must be given to the nature of the claim against them and to whether the defendants' interests are or may be antagonistic. Applying the holding of Distad with regard to peremptory challenges, we conclude that the trial court did not err in its assignment of peremptory challenges in this case. Zwaanshoek sued Albrecht, Rivermeadows, and Meadowrivers, alleging breach and default on a $1 million promissory note and seeking foreclosure on the property used as collateral. The Bank entered the suit claiming an interest in the property adverse to Zwaanshoek. It follows that Zwaanshoek became

the adversary of each of the parties—Albrecht, Rivermeadows, Meadowrivers, and the Bank. Albrecht and Rivermeadows counterclaimed against Zwaanshoek, cross-claimed against Meadowrivers, and asserted numerous affirmative defenses with a favorable outcome of each of those being advantageous to both of them. Not only did an adversarial relationship exist between Zwaanshoek and Albrecht/Rivermeadows, but an additional antagonistic relationship arose between Albrecht/Rivermeadows and Meadowrivers collectively. No adversarial relationship ever developed between Albrecht and Rivermeadows. They chose to assert defenses in tandem. The record clearly evidences that the relationship between Albrecht and Rivermeadows was not antagonistic but rather "allied," or that of one side.

### V

Albrecht and Rivermeadows also assert that the trial court committed reversible error when it ruled against them on their motion for a judgment notwithstanding the verdict or a new trial and several pretrial matters; when the trial court refused to give some of Albrecht's and Rivermeadows' proposed jury instructions dealing with their right to offset on various contentions; and when the trial court refused to admit certain exhibits offered by Albrecht and Rivermeadows. We do not further address the trial court's action with regard to Albrecht's and Rivermeadows' motion for a judgment notwithstanding the verdict or a new trial or to the trial court's pretrial rulings since we have already dealt sufficiently with those issues. We choose to collectively dispose of the remaining issues asserted by Albrecht and Rivermeadows because of the similarity in their nature and argument.

Turning first to the issue of jury instructions, we recognize that:

Our rule is that a party is entitled to have a jury instruction upon its theory of the case but only if such theory is supported by competent evidence and a proper request for the instruction is made.

*Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1199 (Wyo.1987). See also *Con-*

*dict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.,* 743 P.2d 880 (Wyo. 1987).

We have also stated that:

There is no error when the matter complained of is covered in another instruction or by taking the instruction as a whole.

Id. at 883.

In some instances the evidence presented by Albrecht and Rivermeadows was not sufficient to require the giving of some of the proposed instructions. Taking the instructions in totality, we hold that the jury was adequately instructed as to Albrecht's and Rivermeadows' alleged right to offset. Albrecht and Rivermeadows were not prejudiced in any way with respect to their claims of offset by the instructions given to the jury.

The trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law.

*DeJulio v. Foster,* 715 P.2d 182, 186 (Wyo. 1986).

Finally, Albrecht and Rivermeadows contend that the trial court committed prejudicial error in refusing to admit exhibits A–38 and A–93 offered by them. As stated in *McCarthy v. Whitlock Construction and Supply,* 715 P.2d 218, 220–21 (Wyo. 1986):

Our standards of appellate review require reversal only where an asserted error is prejudicial to a substantial right of a party affected. Our rules of appellate procedure phrase the concept as follows:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 7.04, W.R.A.P. Accord Rule 103(a), W.R.E.[1] * * *.

1. W.R.E. 103(a) provides in applicable part:
   Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *.

It is the burden of the appellant to establish an error as prejudicial. We have held that

" 'for an error to be harmful, there must be a reasonable possibility that in the absence of error the verdict might have been more favorable [to the losing party].' " *Herman v. Speed King Manufacturing Company,* [Wyo.,] 675 P.2d [1271,] 1278 [ (1984) ], quoting *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925, 935 (1981).

Evidentiary rulings are largely within the discretion of the trial court. In order to determine the harmful effect of such rulings, we have examined them in the context of all the evidence at trial. In the present case, our review does not support appellant's claim of prejudice.

(Citations omitted.) Albrecht and Rivermeadows failed to demonstrate how they were prejudiced by the trial court's rulings regarding the admission of their exhibits A–38 and A–93. Albrecht and Rivermeadows were allowed a full and fair opportunity before a jury to present and try all their defenses, counterclaims, and cross-claims in this case. The trial court did not abuse its discretion or commit error when it refused to admit Albrecht's and Rivermeadows' exhibits A–38 and A–93.

AFFIRMED.

URBIGKIT, Justice, dissenting.*

I would not concur with the majority's conclusion to approve the decision of the trial court in setting aside what was probably the most significant and factually justified finding in the special verdict, nor with the action of this court in approving a clearly discriminatory application of peremptory challenges. Consequently, I dissent.

Implicit in the trial jury's findings as then reversed by the trial court, issue number three demonstrates the pre-existing error in allocation of peremptory challenges.

* Dissent circulated December 22, 1987.

*ISSUE NO. 3.* Do you find from a preponderance of the evidence that there is such a unity of interest and ownership between Defendant Meadowrivers Corp. and Plaintiff Zwaanshoek that they should be treated as a single entity?
Yes <u>X</u>　No<u>　</u>[1]

This finding is persuasive, if not mandatorily dictated, by the evidence provided by the trial record. However, this unity, to be considered as a single entity under the evidence adduced (in Jackson, Wyoming as considering the general community acquaintanceship with the project, persons and participating lawyers) received six *peremptory challenges*. Conversely, defendants, with two more clearly defined separate entities, received only three. I would find in this result a clear trial error in denial to appellants of equal protection and due process as constitutionally required, as well as a clear violation of W.S. 1–11–202.

By the action taken, the trial court and this court, by approval, rejects the validity of the jury verdict. Cf. *Clarke v. Vandermeer,* 740 P.2d 921 (Wyo.1987); *Jones v. Sheridan County School Dist. No. 2,* 731 P.2d 29 (Wyo.1987); *DeJulio v. Foster,* 715 P.2d 182 (Wyo.1986).

In a finding, which is sustained by the clear substance of trial evidence, it is those trial facts, and not *Distad v. Cubin,* 633 P.2d 167 (Wyo.1981), from which our conclusions should be made as contrary to what is decided in majority decision.

In *Distad,* 633 P.2d at 171, this court determined:

> We hold that in determining whether multiple defendants constitute one side, consideration must be given the nature of the claim against them and whether the defendants' interests are or may be antagonistic.

> \*　　\*　　\*　　\*　　\*　　\*

> Our use of the term "antagonistic" does not mean that parties must express as between them dislike, hatred, unfriendliness, ill-will, or spite; it should be read in accord with our adversary system.

Since a parent corporation with ownership of what was essentially a minimal asset affiliate is involved, unpersuasive justification for the doubled assignment of peremptory challenges is presented.

The fallacy of trial court action in setting aside a factual, well justified finding to support an earlier decision of denied peremptory challenges, is equally objectionable in evaluation of the complete jury verdict. Meadowrivers, as buyer, was newly created for the transaction without meaningful capital. It was only a conduit for the real party in interest, Zwaanshoek, and associated companies of many diverse names and character, to be generally called the Arab Group, as controlling functionary. In result, the majority, by reversal of the jury finding, exonerates acquisition of the lands by the Arab Group without purchase price payment by charging the seller for improvement costs on land which they did not own and for which they will not be paid. It is doubly unfortunate that the erroneous decision in allocation of peremptory challenges was then followed by setting aside a portion of the jury verdict in order to justify the error earlier made and thus eliminating the invalidating relationship between correlative trial issues.

Negotiative gamesmanship and consequent judicial approval has its condonation limitations which were here crossed by this affirmed judgment. The fairness normally sought in judicial inquest should at least require equality in utilization of the specific factual findings in the jury verdict as well as approval of unequal allocation of preemptory challenges.

Consequently, I respectfully dissent.

---

1. In a detailed analysis of the entire transcript and litigative record, I would conclude that if a portion of the verdict was to be set aside and a portion retained, I would have retained issue number three and perhaps set aside most of the remaining findings.